[No. 64942-1.   En Banc.]
Argued October 15, 1997.   Decided May 21, 1998
WILTON RABON, *Petitioner,* v. THE CITY OF SEATTLE, *Respondent.*

SANDERS, J., dissents by separate opinion.

*Mitzi D. Leibst* and *Eileen Weresch-Doornink*, for petitioner.

*Mark H. Sidran, City Attorney,* and *Kevin Kilpatrick, Assistant*; and *Mary F. Perry*, for respondent.

*Aaron H. Caplan, James W. Anable, Jr.,* and *Harlan R. Dorfman* on behalf of Edward Korolak and Animal Legal Defense Fund, amici curiae.

MADSEN, J. — Petitioner Wilton Rabon contends that the trial court erred by denying a preliminary injunction preventing destruction of his two dogs pursuant to Seattle animal control ordinances. He contends the local ordinances conflict with state statutes governing dogs and that the local ordinances are therefore constitutionally invalid. He also argues he was denied due process. The Court of Appeals upheld the trial court's decision. We conclude that state law does not preempt the local ordinances. However, the local ordinances provide that petitioner is entitled to a hearing to present reasons why the dogs should not be destroyed and, therefore, the preliminary injunction should have been granted. We reverse.

## FACTS

Petitioner owns two dogs he describes as Lhasa Apsos,[1] and owns or has owned other dogs as well. In November 1991, Seattle Animal Control received a complaint that petitioner's dogs (including one of the two involved in this case) had tried to attack the complainant and another

---

[1]The record indicates the dogs may be mixed breeds.

person. Other complaints involving the two dogs were received by Animal Control in February 1992 and twice in June 1992. As a result of alleged attacks on two people in June 1992, the dogs were picked up and detained, and petitioner was charged with owning a vicious animal in violation of Seattle Municipal Code (SMC) 9.25.083. Petitioner filed a replevin action seeking the return of the dogs. On September 21, 1992, the court ordered release of the dogs on condition that petitioner comply with all laws concerning dogs and that the dogs be kept on a leash when outside. The criminal prosecution was dismissed when the victims and witnesses failed to appear in court; however, as the trial court in the present matter noted, the 1992 court order concerning the dogs was never vacated.

On May 2, 1993, and again on May 4, 1993, while unleashed, the dogs attacked and bit two people outside petitioner's residence. Animal Control picked up the two dogs, and the City of Seattle (City) charged petitioner with four counts of owning a vicious animal in violation of SMC 9.25.083. The ordinance provides that it is unlawful to own a "vicious" animal with knowledge that the animal is vicious or with reckless disregard for the viciousness of the animal. Petitioner was convicted of the charges, and his convictions were affirmed on review.

After the appeals process was completed, the City notified petitioner that it was going to destroy the dogs pursuant to SMC 9.25.030(A)(4), which authorizes the City's finance director to order the humane destruction of a vicious animal where, among other things, the owner has been found guilty of owning a vicious animal.

On August 3, 1995, petitioner filed a complaint seeking injunctive and declaratory relief. He claimed the ordered destruction of the dogs violates his state and federal constitutional rights, that he was denied due process, and that the City is estopped from destroying the dogs based upon its previous actions. He also asserted he should be able to register his dogs pursuant to state statute. Petitioner asked for a temporary restraining order and a preliminary

injunction. The court issued a temporary restraining order (and extensions), but denied the request for a preliminary injunction on the basis that Petitioner was unlikely to prevail on the merits of his claims. In assessing the likelihood of prevailing, the trial court effectively decided the merits of petitioner's arguments that state statutes either preempted or conflicted with the City's ordinances and that his due process rights had been violated.

Petitioner appealed. The Court of Appeals affirmed in an opinion later ordered published. *Rabon v. City of Seattle*, 84 Wn. App. 296, 932 P.2d 646 (1996), *review granted*, 131 Wn.2d 1024 (1997). Petitioner petitioned for discretionary review by this court, which was granted. Amici curiae briefs in support of petitioner have been filed by the Animal Legal Defense Fund and Edward G. Korolak who has a dog scheduled for destruction by the City; however, destruction is stayed pending a decision in this case.

## ANALYSIS

### Review of denial of preliminary injunction

■ The standard of review for grant or denial of a preliminary injunction is abuse of discretion. *Washington Fed'n of State Employees, Council 28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983). Discretion is abused if the decision is based upon untenable grounds, or the decision is manifestly unreasonable or arbitrary. *Id.* A party seeking relief through a temporary injunction must show a clear legal or equitable right, that there is a well-grounded fear of immediate invasion of that right, and that the acts complained of have or will result in actual and substantial injury. *Tyler Pipe Indus., Inc. v. Department of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). Also, since injunctions are within the equitable powers of the court, these criteria must be examined in light of equity, including the balancing of the relative interests of the parties and the interests of the public, if appropriate. *Id.*

■ There is no dispute that the second and third criteria

are met here; the issue is whether petitioner has a clear legal or equitable right at stake. In deciding whether a party has a clear legal or equitable right, the court examines the likelihood that the moving party will prevail on the merits. *Washington Fed'n*, 99 Wn.2d at 888; *Tyler Pipe*, 96 Wn.2d at 793. An injunction will not be issued in a doubtful case. *Washington Fed'n*, 99 Wn.2d at 888; *Tyler Pipe*, 96 Wn.2d at 793.

We have frequently noted that a court is not to adjudicate the ultimate rights in the case when addressing the propriety of a preliminary injunction. *E.g.*, *Washington Fed'n*, 99 Wn.2d at 888; *Tyler Pipe*, 96 Wn.2d at 793; *Marion Richards Hair Design, Inc. v. Journeymen Barbers, Hairdressers, Cosmetologists & Proprietors Int'l Union of Am.*, 59 Wn.2d 395, 396, 367 P.2d 806 (1962).[2] The Court of Appeals said, however, that while the reviewing court does not ordinarily adjudicate the ultimate rights in the lawsuit, the trial court necessarily decides the merits of the case where the essential facts are not in dispute and the only issue is the likelihood that plaintiff will prevail on the merits. *Rabon*, 84 Wn. App. at 300-01. The Court of Appeals accordingly held that the trial court did not err by essentially adjudicating the ultimate merits of the suit, and held that it, too, had to reach the ultimate issues of law. *Rabon*, 84 Wn. App. at 301. Petitioner contends the Court of Appeals erred in this analysis and argues that reaching the ultimate merits of the suit is improper where the harm is irreversible and the issues are of serious public concern.

Some courts have held that when reviewing an order granting or denying a preliminary injunction, the reviewing court may reach the merits of any purely legal question provided that the interim harm factor is undisputed,

---

[2]CR 65 does provide that before or after commencement of a hearing on a request for a preliminary injunction the court may order the trial of the action on the merits to be advanced and consolidated with the hearing on the preliminary injunction. The Court of Appeals has held that absent such consolidation, or a stipulation of the parties, the court cannot enter an order disposing of the case on the merits. *Turner v. City of Walla Walla*, 10 Wn. App. 401, 406, 517 P.2d 985 (1974).

because in such a situation the reviewing court is in as good a position to resolve the matter as the trial court would be after determination of the appeal from the preliminary injunction ruling. *E.g., Ortiz v. Woods,* 129 Cal. App. 3d 672, 181 Cal. Rptr. 209, 211 (1982); *see also Callaway v. Block,* 763 F.2d 1283, 1287 (11th Cir. 1985) (holding that it would address on the merits statutory construction and due process claims since the parties' arguments went to the merits, no factual disputes existed, and the questions raised were purely legal questions); *Dixon Ass'n for Retarded Citizens v. Thompson,* 91 Ill. 2d 518, 440 N.E.2d 117, 120, 64 Ill. Dec. 565 (1982) (traditional scope of review of order issuing preliminary injunction need not be followed where trial court decision is in effect a decision on the merits). As a practical matter, it is difficult to see how a reviewing court can assess the likelihood of prevailing on the merits where a purely legal issue is involved without examining the merits of the legal issue. Petitioner does not explain how the trial court or the Court of Appeals should have analyzed the legal issues here any differently.

We hold that in ruling on a request for a preliminary injunction the trial court must reach the merits of purely legal issues for purposes of deciding whether to grant or deny the *preliminary injunction,* and a reviewing court must similarly evaluate purely legal issues in assessing the propriety of a decision to grant or deny a preliminary injunction. However, in accord with well-settled principles, a court is not to adjudicate the ultimate merits of the case.

■ Petitioner also argues that where the harm will be severe and irreversible a preliminary injunction should not be denied without clear legal precedent on the legal issues presented. Lack of precedent on an important question is not the test. In *Tyler Pipe,* the trial court had entered a conclusion of law stating that the case presented a " 'substantial constitutional question not definitely resolved by prior authorities[,]' " and the movant argued that this conclusion met the requirement of demonstrating a clear right. *Tyler Pipe,* 96 Wn.2d at 787, 793. We held that this is

not the proper standard; instead, the party must show the likelihood of prevailing on the merits. *Id.* at 793. We reject petitioner's contention that lack of precedent combined with severity of harm requires that a preliminary injunction be granted.

### Preemption or conflict with state law

■ Article XI, section 11 of the state constitution provides that "[a]ny . . . city . . . may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Within this authority, a municipality may enact an ordinance touching on the same matter as a state law, provided that state law is not intended to be exclusive and the ordinance does not conflict with the general law of the state. *King County v. Taxpayers of King County*, 133 Wn.2d 584, 611, 949 P.2d 1260 (1997); *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991). Thus, an ordinance is unconstitutional if a state enactment preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists between the ordinance and a statute which cannot be harmonized. *King County*, 133 Wn.2d at 611; *Brown*, 116 Wn.2d at 559.

■ An ordinance is presumed constitutional and a heavy burden rests upon the challenger to establish unconstitutionality. *Id.*

Petitioner contends that the city ordinances providing authority for destruction of the dogs violates CONST. art. XI, § 11 both on the ground that state law preempts the field and that the local ordinance conflicts with state law.

Under SMC 9.25.083, it is unlawful to own a vicious animal (other than a licensed guard or attack dog) with knowledge that the animal is vicious or with reckless disregard of the viciousness of the animal. SMC 9.25.024 defines a vicious animal as "an animal which bites, claws or otherwise harms a human being or another animal, or which demonstrates menacing behavior toward human beings or domestic animals" except where a person or other

animal has provoked it. Under SMC 9.25.030(A)(4) the City's finance director "is authorized to . . . [d]irect immediate humane disposal of any animal . . . (c) involved in a court proceeding in which the owner pled guilty or was found to be guilty of owning a . . . vicious . . . animal."

State law enacted in 1987, LAWS OF 1987, ch. 94, pertains to "potentially dangerous" and "dangerous" dogs. A "potentially dangerous dog" means

> any dog that when unprovoked: (a) Inflicts bites on a human or a domestic animal either on public or private property, or (b) chases or approaches a person upon the streets, sidewalks, or any public grounds in a menacing fashion or apparent attitude of attack, or any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to cause injury or otherwise to threaten the safety of humans or domestic animals.

RCW 16.08.070(1). State law provides that "potentially dangerous" dogs "shall be regulated only by local, municipal, and county ordinances. Nothing in this section limits restrictions local jurisdictions may place on owners of potentially dangerous dogs." RCW 16.08.090(2).

A "dangerous dog" is defined as

> any dog that according to the records of the appropriate authority, (a) has inflicted severe injury on a human being without provocation on public or private property, (b) has killed a domestic animal without provocation while off the owner's property, or (c) has been previously found to be potentially dangerous, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals.

RCW 16.08.070(2). " 'Severe injury' means any physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery." RCW 16.08.070(3). It is unlawful to own a "dangerous" dog unless it is registered with local animal control authorities. RCW 16.08.080(1). A certificate of registration is to issue only if the owner has a proper enclosure to confine the

animal, conspicuously posts signs warning of the dangerous animal, and obtains a surety bond or liability insurance of at least $50,000 payable to any person injured by the dog. RCW 16.08.080(2)(a)-(c). It is also unlawful for the owner to permit the dog to be outside the enclosure unless properly muzzled and restrained by a leash. RCW 16.08.090(1).

The state statutes provide for criminal penalties in connection with ownership of "dangerous" dogs. If a "dangerous" dog is not properly registered, if the owner fails to obtain a surety bond or insurance, if the dog is not kept in the proper enclosure, or if the dog is outside the enclosure and outside the owner's residence without proper physical restraint the owner is guilty of a gross misdemeanor. RCW 16.08.100(1). In addition, under any of these circumstances the dog "shall be immediately confiscated by an animal control authority." *Id.* If the owner has a previous conviction under the statute and the dog attacks or bites a person or domestic animal the owner is guilty of a class C felony. RCW 16.08.100(2). The owner is also guilty of a class C felony if the dog "aggressively attacks and causes severe injury or death of any human . . . ." RCW 16.08.100(3).[3] In the latter two circumstances, the dog is to be immediately confiscated by the animal control authority, placed in quarantine for the proper length of time, and then destroyed "in an expeditious and humane manner." RCW 16.08.100(2), (3).

Preemption may be found where there is express legislative intent to preempt the field or such intent appears by necessary implication. *Brown*, 116 Wn.2d at 560. Petitioner concedes there is no express statement of legislative intent to preempt the field. He also recognizes that state law is clearly not intended to regulate "potentially dangerous" dogs. He contends, however, that state law preempts regulation of "dangerous" dogs by necessary implication. He reasons that the statutes contain single

---

[3]This provision was at issue in *State v. Bash*, 130 Wn.2d 594, 925 P.2d 978 (1996).

uniform standards for statewide application and constitutes such a comprehensive scheme that there is no room left for concurrent jurisdiction. *See City of Spokane v. Portch*, 92 Wn.2d 342, 346, 596 P.2d 1044 (1979). He then reasons that because the Seattle ordinances do not distinguish between "potentially dangerous" and "dangerous" dogs, but instead the definition of "vicious" animal includes what are defined as "dangerous" dogs under state law, the local ordinances relating to destruction of his dogs are preempted. Petitioner places considerable emphasis on RCW 16.08.080(2) which states that "the animal control authority . . . *shall* issue a certificate of registration" provided the statutory requirements of keeping dangerous dogs are met. (Emphasis added.) He contends that by this language the Legislature indicated its intent that local authorities must follow state law with regard to "dangerous" dogs.

As the Court of Appeals observed, however, RCW 16.08.090(2) specifically provides that "potentially dangerous" dogs are to be regulated locally, and RCW 16.08.080(4) provides that cities and counties may charge an annual fee for registering dogs in addition to a regular license fee. *Rabon*, 84 Wn. App. at 302. In contrast, the court noted the absence of any expression of intent to preempt local regulation. The court held there was no implied intent to preempt. *Id.*

■■■ We agree with the Court of Appeals. In *Brown*, we held that where state fireworks law expressly provided some measure of concurrent jurisdiction to municipalities, the Legislature did not intend to preempt the field. *Brown*, 116 Wn.2d at 560. Here, the statutes do not merely provide for concurrent jurisdiction, but rather expressly provide that sole jurisdiction over "potentially dangerous" dogs lies with local government.

In addition, the language of RCW 16.08.090(2) that "potentially dangerous" dogs shall be regulated "*only*" by local law indicates that both local and state law may govern "dangerous" dogs, particularly where there is no com-

parable provision directing that the state has sole jurisdiction over "dangerous" dogs. Nothing in the statutes *clearly* indicates legislative intent that state law preempts. Absent any such clear indication, the presumption that an ordinance is constitutional, along with the rule that courts will not interpret a statute to deprive a municipality of the power to legislate on subjects within CONST. art. XI, § 11, *see State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979), compels our holding that state law does not preempt local law.

As to petitioner's reliance on *Portch*, the court held there that state obscenity laws preempted local law because uniform laws were necessary to avoid infringement of First Amendment rights. *Portch*, 92 Wn.2d 342. *Portch* does not stand for the proposition that uniformity is always required. Amicus Korolak claims that *City of Seattle v. Williams*, 128 Wn.2d 341, 908 P.2d 359 (1995) requires uniformity. There, the court invalidated a local ordinance defining driving under the influence of alcohol by a different level of alcohol concentration than state law does. However, the court's decision was due to state statutes specifically requiring uniformity. *Williams*, 128 Wn.2d at 347-48. Korolak points to no comparable statute in this case. The argument that the Legislature intended uniformity is also undercut by the fact that local jurisdictions are solely responsible in the area of potentially dangerous dogs, and clearly may enact nonuniform laws on the subject.[4]

Finally, petitioner says that legislative history shows intent to preempt. The court in *Brown* held, however, that legislative history is not relevant when concurrent jurisdiction is expressly provided for. *Brown*, 116 Wn.2d at 560. Because the state law expressly recognizes local jurisdiction as to "potentially dangerous" dogs, the legislative

---

[4]Amicus Korolak also contends that lack of uniformity in this area creates confusion and hardship for intercity travelers traveling with their dogs, and suggests nonuniform dog laws are violative of the fundamental right to travel. This is an issue raised only by amicus and we will not consider it. *See In re Detention of J.S.*, 124 Wn.2d 689, 702, 880 P.2d 976 (1994).

history is irrelevant on the preemption issue here as well. In any case, the final bill reports relied upon indicate that the dog control statutes passed in 1987 were intended in large part to require insurance to pay for injuries caused by dogs. That purpose does not clearly indicate legislative intent to preempt.

■■ An ordinance also violates CONST. art. XI, § 11 if it directly and irreconcilably conflicts with a state statute. *Brown,* 116 Wn.2d at 561. If the two enactments can be harmonized, however, no conflict will be found. *Id.* Unconstitutional conflict is found where an ordinance permits that which is forbidden by state law, or prohibits that which state law permits. *Trimen Dev. Co. v. King County,* 124 Wn.2d 261, 269, 877 P.2d 187 (1994); *City of Bellingham v. Schampera,* 57 Wn.2d 106, 110-11, 356 P.2d 292, 92 A.L.R.2D 192 (1960).

Petitioner argues that the ordinance forbids possession of dangerous dogs while the state statute expressly allows such possession under RCW 16.08.080, and thus the ordinance prohibits what RCW 16.08 permits. He reasons that the definition of "vicious animal" under the ordinance necessarily includes "dangerous" dogs, and state law allows registration while the ordinances require destruction of the animal in circumstances not requiring destruction under state law.

■■ The fact that an activity may be licensed under state law does not lead to the conclusion that it must be permitted under local law. A local ordinance may require more than state law requires where the laws are prohibitive. *Lenci v. City of Seattle,* 63 Wn.2d 664, 671, 388 P.2d 926 (1964). For example, in *Brown,* the local ordinance was held not to conflict with state fireworks law where the local ordinance went further in its prohibition of possession of fireworks than state law by providing for a shorter time period for lawful possession of fireworks. Similarly, in *Schillberg* the court reasoned that state law concerning safe operation of motor boats did not conflict with a local ordinance banning the operation of motor boats on a

specific lake. The court said the state provisions did "not in any way grant permission to operate boats in any place." *Schillberg*, 92 Wn.2d at 108.

Here, state law provides that "[i]t is unlawful for an owner to have a dangerous dog in the state without a certificate of registration issued under this section." RCW 16.08.080(1). Rather than a permit to own a dangerous dog, this provision requires that at a minimum if one owns a dangerous dog the registration requirements must be followed, and thus it is prohibitory in nature. As noted, a local ordinance may go further in its prohibition than state law. *Brown*, 116 Wn.2d at 562-63.

Petitioner contends, however, that because RCW 16.08.080(2) states that the animal control authority *"shall"* issue a certificate of registration when state requirements are satisfied, the statute imposes a mandatory duty on localities to register and license dangerous dogs. The Court of Appeals reasoned, however, that the word "shall" creates mandatory licensing of dogs as a minimum safeguard to protect the public from dangerous dogs, and, thus, this language is also prohibitory in nature. *Rabon*, 84 Wn. App. at 304. Protection of the public from dangerous dogs is a clear purpose of the state statutes. In exercise of its police power a municipality may wish to provide further protection from dangerous or vicious animals.

Petitioner also argues that the local ordinance is less restrictive than state law and thus is invalid under CONST. art. XI, § 11. He contends that under the city ordinances all dog bites are treated alike regardless of their severity and a dog's first "offense" simply puts the dog's owner on notice that the dog has vicious propensities. He says that, in contrast, under state law the dog is required to be labeled "dangerous" after a first severe bite and to be insured and registered. This argument lacks merit, however, since the ordinance nowhere states or implies that a "dangerous" dog may be kept without complying with state law.

We hold that state law neither preempts nor

conflicts with the city ordinances at issue and therefore the ordinances do not violate CONST. art. XI, § 11.

## Hearing on whether dogs should be destroyed

Petitioner maintains that the procedures followed in determining that his dogs should be destroyed violated his due process rights. He claims he is entitled to a hearing on the issue whether the dogs should be destroyed. We agree that under the local ordinances petitioner should be heard on this question.

As the Court of Appeals noted, the City does not dispute that petitioner is entitled to a hearing, but maintains the criminal trial provided the required hearing. However, a determination that an animal is "vicious" does not mandate destruction of the animal under the ordinances because nothing in the code *requires* the destruction of a vicious animal. SMC 9.25.030(A)(4) instead provides that the director of finance is "authorized" to direct immediate humane destruction of the animal if the owner is found guilty of owning a "vicious" animal. The director thus has discretion, including discretion not to order the animal destroyed. Because it is the director who makes the decision whether the animal is to be destroyed, and not the court in the criminal proceedings, we do not agree that petitioner has had a hearing where he can argue that the animals should not be destroyed.

To the contrary, the ordinances contemplate that petitioner should be heard on that question. Provisions in the Seattle code indicate the importance of an owner providing information why the dogs should not be destroyed. A conviction of owning a "vicious" animal is not the only route leading to possible destruction of a "vicious" animal at the director's order. The director is also authorized, under SMC 9.25.030(A)(4), to order the immediate humane disposal of an animal which the director has determined to

be "vicious" or "dangerous" under SMC 9.25.035.[5] Under SMC 9.25.035(B) an owner is entitled to meet with the director or director's designee and "give, orally and/or in writing, any reasons or information as to why the animal should not be destroyed." SMC 9.25.035(B) does not, by its terms, apply directly in this case, but it is indicative of intent that the owner be heard.

Even more telling are SMC 9.25.036(A) and SMC 9.25.037(B)(1), which provide that an owner has the right to appeal "a determination of the Director ordering the humane disposal of a vicious . . . animal[,]" and that, upon review, the hearing examiner "shall have the power to . . . [w]ith the owner's consent, authorize an alternate disposition . . . ."[6] Unlike SMC 9.25.035(B), these ordinances do, by their terms, directly apply in this case.

SMC 9.25.036 and SMC 9.25.037 do not concern an appeal from a determination that an animal is *vicious*. Instead, they concern appeal from a determination that an animal is to be *destroyed*. While petitioner clearly is not entitled to contest the determination that his animals are vicious, he is entitled to contest the determination that they should be destroyed, regardless of whether the finding of viciousness was made by the director or necessarily made by the jury in finding him guilty of owning a vicious animal. The hearing, which is provided for by SMC 9.25.037, must be conducted according to SMC 3.02.090 and SMC 3.02.100. SMC 9.25.037(A). SMC 3.02.090 and SMC 3.02.100 address hearings in contested cases and provide, among other things, for submission of evidence, cross-examination of witnesses, arguments, and a written decision with findings,

---

[5]A "dangerous" animal is not the same as defined in the state statute; a "dangerous" animal under the city code does not include a cat or dog. SMC 9.25.053.

[6]SMC 9.25.037(B)(1) gives as examples of alternate disposition the placement of a dangerous animal in a zoo or a snake in a herpetarium. These examples are preceded by the words "such as" indicating they are not exclusive, and the ordinance clearly applies to appeals from an order directing destruction of "vicious" animals in light of SMC 9.25.036 providing for the right of appeal from a directive ordering "the humane disposal of a *vicious or* dangerous animal . . . ." (Emphasis added).

conclusions, and reasons for the decision. Upon this appeal, as noted, SMC 9.25.037 expressly provides that the hearing examiner has the power to authorize an alternate disposition of the animal. Plainly, because it is the owner who is entitled to appeal, the owner is entitled to provide evidence and argument as to why the animal should not be destroyed despite its being a vicious animal. We emphasize that the owner's right under the ordinances to be heard on this question does not allow the owner the right to challenge the determination that the animal is vicious.

Because we find that petitioner has been denied a hearing provided for by the ordinances and that under the ordinances petitioner is entitled to present reasons why the dogs should not be destroyed, we do not reach the due process issue.

Petitioner has a clear legal right at stake, and the preliminary injunction should have been granted. We remand for further proceedings consistent with this opinion.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, and TALMADGE, JJ., concur.

SANDERS, J. (dissenting) — The majority takes a half step in the right direction when it vacates the order to destroy these dogs in favor of a new hearing for their master. However, if this ordinance conflicts with the state statute, as I think it does, such a hearing is an unnecessary prerequuisite to their release.

Mr. Rabon's two Lhasa Apso dogs, "Pasheba" and "Word," have been this elderly gentleman's primary source of companionship and affection for years. Yet the Seattle city government intends to kill both dogs while admitting one of them has never bitten anyone. The same city government has also rejected Mr. Rabon's plea that his beloved companions be sent to a no-kill shelter in Utah as an alternative to municipal execution. I would protect the owner's legal rights, invalidate this ordinance which conflicts with state law, spare the life of these dogs, direct

that they be immediately returned to their master, and order this municipal government to comply with the statute.

The majority holds RCW 16.08 does not conflict with Seattle Municipal Code (SMC) 9.25 because "[a] local ordinance may require more than state law requires where the laws are prohibitive." Majority at 292. The majority reasons that state law merely creates a "minimum safeguard" requiring registration of dangerous dogs. Majority at 293. I disagree. RCW 16.08 sets out a comprehensive legislative scheme for regulating dangerous dogs. The City's ordinances supplant and subvert this statutory purpose.

Article XI, section 11 of the Washington Constitution provides city ordinances must yield to a statute on the same subject if a conflict exists such that the statute and ordinance cannot be harmonized. *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991) (citing *City of Spokane v. J-R Distribs., Inc.*, 90 Wn.2d 722, 730, 585 P.2d 784 (1978)). The test for determining an impermissible conflict is whether the " 'ordinance declares something to be right which the state law declares to be wrong, or vice versa.' " *Town of Republic v. Brown*, 97 Wn.2d 915, 919, 652 P.2d 955 (1982) (quoting *Seattle Newspaper-Web Pressmen's Union Local No. 26 v. City of Seattle*, 24 Wn. App. 462, 469, 604 P.2d 170 (1979)). An ordinance does not unconstitutionally conflict with a statute merely because one prohibits a wider scope of activity than the other. *City of Seattle v. Eze*, 111 Wn.2d 22, 33, 759 P.2d 366, 78 A.L.R.4TH 1115 (1988); however, contrary to the majority's conclusion, RCW 16.08 is not a simple prohibitory enactment. It is a comprehensive scheme regulating both the registration and execution of dangerous dogs. RCW 16.08.080; RCW 16.08.100.

The statute first requires classification of dogs into two categories: "potentially dangerous" and "dangerous."[7] RCW 16.08.070. While the statute expressly allows local

---

[7]Legislative history demonstrates RCW 16.08, in its original form, closely resembled Seattle's vicious dog ordinance which regulates "vicious" animals. This scheme was rejected, and the classifications of "potentially dangerous" and

authorities to place restrictions on potentially dangerous dogs, it does *not* completely relinquish jurisdiction of dangerous dogs to local authorities. RCW 16.08.090(2).

For dogs meeting the detailed statutory definition of a dangerous dog,[8] "[t]he animal control authority of the city or county in which an owner has a dangerous dog *shall* issue a certificate of registration" upon presentation of sufficient evidence. RCW 16.08.080(2) (emphasis added). "Shall" imposes a mandatory duty. *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994). The statute therefore mandates localities to register and license dangerous dogs. RCW 16.08.080(2). The City of Seattle doesn't.

The statutory scheme also designates which animal control authority must issue the certificate, imposes penalties in connection with ownership of dangerous dogs, and allows destruction of the dogs only under specific circumstances. RCW 16.08.080; RCW 16.08.100. The statute not only prohibits ownership of dangerous dogs without proper registration, it mandates such registration. RCW 16.08.080(2). As Chief Justice Durham noted in *State v. Bash*, 130 Wn.2d 594, 612-13, 925 P.2d

---

"dangerous" dogs were adopted instead. 1 LEGISLATIVE DIGEST & HISTORY OF BILLS OF THE SENATE AND HOUSE OF REPRESENTATIVES, S.B. 5301, 50th Legis. Sess. 150 (Final ed., 1987).

[8] **16.08.070 Dangerous dogs—Definitions**

Unless the context clearly requires otherwise, the definitions in this section apply throughout RCW 16.08.070 through 16.08.100.

(1) "Potentially dangerous dog" means any dog that when unprovoked: (a) Inflicts bites on a human or a domestic animal either on public or private property, or (b) chases or approaches a person upon the streets, sidewalks, or any public grounds in a menacing fashion or apparent attitude of attack, or any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to cause injury or otherwise to threaten the safety of humans or domestic animals.

(2) "Dangerous dog" means any dog that according to the records of the appropriate authority, (a) has inflicted severe injury on a human being without provocation on public or private property, (b) has killed a domestic animal without provocation while off the owner's property, or (c) has been previously found to be potentially dangerous, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans or domestic animals.

RCW 16.08.070(1)-(2).

978 (1996), "Chapter 16.08 clearly contemplates local administrative regulation and enforcement. . . . [These provisions] must be implemented and enforced by local animal control authorities."

But Seattle's ordinances completely ignore this state statute. Adopted years before the Legislature enacted RCW 16.08, this ordinance fails to classify dogs as "potentially dangerous" or "dangerous" and does not provide for registration of dangerous dogs. As Judge Grosse opined in his concurring opinion:

> Under its ordinances, the City would never find a dog to be "dangerous." The result is that no Seattle dog owner has the opportunity to register his or her dog using the procedure outlined in RCW 16.08.080.
>
> By eviscerating RCW 16.08's dual definitions of dogs, the City directly clashes with state statute.

*Rabon v. City of Seattle*, 84 Wn. App. 296, 308, 932 P.2d 646 (1996) (Grosse, J., concurring).

The City's ordinance does not work in tandem with state law. In fact it is less protective of potential dog bite victims than is the statute. For example the City treats all dog bites alike regardless of severity. SMC 9.25.083. Under the ordinance, the first severe bite merely puts the owner on notice of viciousness; whereas, under state law, the dog would be classified dangerous. SMC 9.25.083; RCW 16.08.070(2). Under state law, the owner of a dangerous dog would be required to provide a proper enclosure for the dog, a surety bond, and liability insurance. RCW 16.08.080(2)(a)-(c). But no such requirements exist under the ordinance. Moreover, under state statute, the owner must also post signs warning of the presence of a dangerous dog (RCW 16.08.080(2)(a)), but the City does not require any such protections. Certain dogs otherwise required by state statute to be registered, insured, and contained could possibly remain free under the City's ordinances. This is contrary to the statute.

The majority suggests that although the City has failed to adopt the statutory provisions on dangerous dogs, "the

ordinance nowhere states or implies that a 'dangerous' dog may be kept without complying with state law." Majority at 293. This claim is illusory because the local ordinance sets up a scheme of regulation completely different from that of the statutory scheme, was enacted before the statute was adopted, and completely supplants it. Moreover, the facts of this case demonstrate the City does not comply with chapter 16.08. The city ordinance does not classify dogs as "potentially dangerous" or "dangerous" and, as a result, the statutory provisions regarding dangerous dogs are out the window. Application of this ordinance demonstrates the City's failure to classify the biting dog in this case as "dangerous" upon proof the dog had previously nipped or menaced a passerby. RCW 16.08.070(2).

Likewise, the City's suggestion that it may kill Mr. Rabon's dogs because they are "potentially dangerous" is inconsistent with the state statute. First, applying state law, the dogs would likely have been classified as "dangerous," not "potentially dangerous." RCW 16.08.070(2). Second, RCW 16.08 indicates the Legislature did not intend municipalities to impose greater restrictions on "potentially dangerous" dogs than those applicable to "dangerous" dogs because RCW 16.08.100 allows for execution of a "dangerous" dog in only limited and specific circumstances. As Mr. Rabon notes, if the City were correct, dog owners and defense attorneys would find themselves arguing the bite was so vicious that the dog qualifies as "dangerous" in order to spare the dog's life. Supplemental Br. of Pet'r at 20.

Finally, the majority relies heavily upon *Brown*, 116 Wn.2d 556, to hold the statutory requirements act as a "minimum safeguard" to protect the public from dangerous dogs. Majority at 290-93. While the majority borrows this language from *Brown*, 116 Wn.2d at 560-62, the case is distinguishable. The statute at issue in *Brown* expressly directed the promulgation of statewide *minimum* standards and allowed for more restrictive local rules. *Id.* at 560, 562. The statute's legislative history supports this view as well. *Id.* at 561. However, RCW 16.08 contains no analogous

language contemplating additional restrictions on dangerous dogs. Rather, this statute consists of a complete statutory scheme for regulating dangerous dogs. RCW 16.08.080; RCW 16.08.100.

This statutory scheme also distinguishes this case from subsequent cases relying on *Brown*, which simply expand on restrictions existing in state law. But here the City completely ignores the legislative scheme with no regard for its definitions, policy, or mandates. *See State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 594 P.2d 448 (1979) (ordinance prohibited operation of boats on certain lakes, while statutes concerned only the operation of boats); *Lenci v. City of Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964) (ordinance required eight-foot-high wall, while state law required six-foot wall); *Brown*, 116 Wn.2d 556 (statute restricted dates and times for sale and use of fireworks, while ordinance further restricted those dates and times).

Accordingly, SMC 9.25 violates RCW 16.08. Mr. Rabon's dogs must be returned to their owner and their lives must be spared.