[No. 67710-1-I.   Division One.   April 9, 2012.]

MELINDA SPEELMAN, *Petitioner*, v. BELLINGHAM/WHATCOM
COUNTY HOUSING AUTHORITIES ET AL., *Respondents*.

*Kelly Ann Owen* and *Mary E. Welch* (of *Northwest Justice Project*), for petitioner.

*Jonathan K. Sitkin* and *Holly M. Stafford* (of *Chmelik Sitkin & Davis PS*), for respondents.

¶1 LEACH, C.J. — Melinda Speelman challenges the trial court's denial of her request for a preliminary injunction in her action contesting the termination of her family's Section 8 housing subsidy. The Bellingham Housing Authority (BHA) knew that Speelman was incarcerated at the Whatcom County Jail when it sent a letter to her home address notifying her that it was terminating her housing assistance payments. Because this notice was not reasonably calculated under the circumstances to reach Speelman timely, she demonstrated that she likely would prevail on the merits of her claim that BHA denied her procedural due process. Therefore, the trial court erred by denying her request for a preliminary injunction. We reverse.

## FACTS

¶2 BHA is a public housing authority that administers the federal Section 8 Housing Choice Voucher Program in Whatcom County. This program provides housing assis-

tance in the form of rental subsidies to eligible families. The United States Department of Housing and Urban Development funds the Housing Choice Voucher Program. The governing statute requires BHA to adopt a conforming administrative plan.[1]

¶3 BHA's administrative plan lists several "family obligations" that participants must accept when entering the Housing Choice Voucher Program. These obligations include (1) notifying BHA within 14 days if any family member no longer resides in the residence, (2) obtaining BHA approval of all occupants in the residence, and (3) alerting BHA within 14 days if the family is absent from the residence.[2] BHA may terminate assistance if a family fails to meet its obligations, is absent from the residence for more than 30 days without authorization, or allows persons who are not BHA approved to live in the residence. Before terminating a family's assistance, the administrative plan requires that BHA send a termination notice to the participant's home. The notice must inform the participant that he or she has the right to request a hearing within 14 days. BHA considers a mailed notice delivered unless it is returned to BHA clearly marked "undeliverable."

¶4 In February 2011, Speelman and her two minor children moved into Walton Place Two, a BHA-subsidized apartment in Bellingham.[3] At the time the family moved in, BHA knew that Speelman was on probation. In March, Speelman asked the sentencing court to revoke her probation because she could not pay monthly probation fees. The trial court did so and sentenced her to 75 days in jail.

---

[1] 42 U.S.C. § 1437c-1.

[2] The administrative plan defines "absence" as "no member of the family is residing in the unit." "Family members" include all household members approved to live in the unit by the BHA.

[3] Speelman's sole income source is $67 per week in unemployment benefits. Speelman pays $14 per month in rent, while BHA makes up the remaining $1,057 in rental payments.

¶5 Before beginning her sentence on April 28, Speelman arranged for Audry Larsen, her 19-year-old daughter, to care for Speelman's other children at the Walton Place Two apartment. Speelman did not obtain BHA's approval for Larsen to live in the apartment or notify BHA that she would be absent.[4]

¶6 While Speelman was in jail, BHA's Bellingham police liaison, Officer Lowell English, investigated a complaint that Speelman's children were "running around the apartment complex at night."[5] When Officer English arrived at Speelman's apartment, he spoke to Larsen and her fiancé, Chris Kleman, who told Officer English that Speelman was not at the apartment because she was out of town visiting a hospitalized relative. After Officer English left Speelman's apartment, he ran background checks on Speelman, Larsen, and Kleman and discovered that Speelman was at that time confined in the Whatcom County Jail. Officer English also noticed that the police system listed Speelman's Walton Place Two apartment as Larsen's address.

¶7 On June 2, BHA sent a letter to Speelman's home address, notifying her that it would be terminating her housing choice voucher payments effective July 31. Citing BHA administrative plan provisions, the letter listed three reasons for the termination decision: (1) an unauthorized person was residing in Speelman's apartment, (2) Speelman had been absent from her apartment for more than 30 days because she was in jail, and (3) Speelman failed to alert the BHA that she would be absent.[6] The letter advised Speelman of her right to appeal BHA's decision by submitting a written request for a hearing within 14 days of the

---

[4] At that time, Larsen lived with her fiancé and his father.

[5] There were also reports that an unknown male had been paying Speelman's rent and "someone had heard something that may have been a drug reference from people in Ms. Speelman's unit."

[6] The explanation section of the termination notice reads in part, "The head of household has been in jail since 4/28/11—unreported to the landlord and BHA. Audry Larsen has been living in the unit as an unapproved/unauthorized household member."

notice date. Although Speelman had given Larsen the key to her mailbox, Larsen did not open BHA's letter because Speelman had instructed her not to open any mail except that from the children's school.

¶8 On June 17, Speelman completed her sentence and returned to her apartment. There, she discovered BHA's termination notice. On June 23, seven days after the deadline, Speelman requested a hearing. BHA denied Speelman's request as untimely.[7] BHA sent Speelman a final termination notice on June 29 and reassigned the housing choice voucher funds to another family.

¶9 Speelman sued BHA in superior court under 42 U.S.C. § 1983, alleging substantive and procedural due process violations, and requesting declaratory and injunctive relief. Speelman also asked for a preliminary injunction requiring BHA to continue making housing assistance payments to her during the pendency of the lawsuit.

¶10 The trial court denied Speelman's motion for a preliminary injunction. In its oral ruling, it found "no due process violation whatsoever" and stated, "[A]ny loss of the appeal rights are solely and exclusively due to the circumstances of the plaintiff [and] entirely beyond the control of the defendant." The trial court also denied Speelman's motion for reconsideration. At the end of the trial court's hearing on Speelman's motion for reconsideration, however, Speelman moved for an "emergency time-limited injunction," which the trial court granted. Four days later, the court entered an agreed order staying the emergency preliminary injunction.

¶11 Speelman filed a motion in this court for accelerated discretionary review. BHA sought cross discretionary review of the trial court's decision to grant Speelman's motion

---

[7] BHA policy states that a hearing is not required if "the participant has failed to provide a written request for an informal hearing to the Housing Authority within 14 calendar days of the notice of adverse action."

for an emergency preliminary injunction. This court granted Speelman's petition for discretionary review and BHA's cross petition for discretionary review.

## STANDARD OF REVIEW

■ ■ ¶12 We review a trial court order granting or denying a preliminary injunction for an abuse of discretion.[8] A trial court abuses its discretion if its decision is "based upon untenable grounds, or the decision is manifestly unreasonable or arbitrary."[9] The adequacy of notice is a mixed question of law and fact,[10] which we review de novo.[11]

## ANALYSIS

■ ¶13 Speelman challenges the trial court's denial of her motion for a preliminary injunction. A party seeking a preliminary injunction must show (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) the acts complained of have resulted or will result in actual and substantial injury.[12] "[S]ince injunctions are within the equitable powers of the court, these criteria must be examined in light of equity, including the balancing of the relative interests of the parties and the interests of the public, if appropriate."[13] The entitlement to an injunction should be clear; a court will not issue an injunction in a doubtful case.[14]

---

[8] *Rabon v. City of Seattle*, 135 Wn.2d 278, 284, 957 P.2d 621 (1998).

[9] *Rabon*, 135 Wn.2d at 284.

[10] *Miebach v. Colasurdo*, 102 Wn.2d 170, 175, 685 P.2d 1074 (1984).

[11] *Humphrey Indus., Ltd. v. Clay St. Assocs.*, 170 Wn.2d 495, 501-02, 242 P.3d 846 (2010).

[12] *Rabon*, 135 Wn.2d at 284.

[13] *Rabon*, 135 Wn.2d at 284.

[14] *Rabon*, 135 Wn.2d at 284-85.

¶14 The first criterion requires a court to examine the likelihood that the moving party will prevail on the merits of its claim.[15] Speelman contends that BHA violated her constitutional right to procedural due process by providing insufficient notice of its termination decision.[16] "When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation."[17] Due process does not require actual notice.[18] "Rather, . . . due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' "[19]

¶15 Neither party disputes that Speelman has a constitutionally protected property interest in her housing choice voucher or that she was entitled to an opportunity to be heard. Instead, the dispute centers on the adequacy of the notice she received. Speelman contends that due process required BHA to send the termination notice to the Whatcom County Jail. We agree. In *Robinson v. Hanrahan*,[20] the United States Supreme Court held that notice of automobile forfeiture proceedings sent to the vehicle owner's home address was constitutionally inadequate when the State knew the owner was in prison:

---

[15] *Rabon*, 135 Wn.2d at 285.

[16] BHA contends that Speelman failed to preserve the notice issue for appeal because she did not argue it below. But our review of the record satisfies us that Speelman raised this issue both in her pleadings and at the preliminary injunction hearing. We therefore consider the issue preserved.

[17] *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

[18] *Jones v. Flowers*, 547 U.S. 220, 226, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006).

[19] *Jones*, 547 U.S. at 226 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

[20] 409 U.S. 38, 40, 93 S. Ct. 30, 34 L. Ed. 2d 47 (1972).

[T]he State knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail. Under these circumstances, it cannot be said that the State made any effort to provide notice which was "reasonably calculated" to apprise appellant of the pendency of the forfeiture proceedings.

The Court rejected the State's argument that notice was sufficient because it was sent to the address listed with the secretary of state, as required by statute. Therefore, under *Robinson*, actual knowledge that a notice given using normal procedures would be ineffective triggers a due process obligation to take other steps to provide notice.[21]

¶16 BHA's termination notice affirmatively shows that it knew Speelman was incarcerated when it sent the letter to her apartment. The letter states, "The head of household *has been in jail since 4/28/11*—unreported to the landlord and BHA." (Emphasis added.) While this notice conformed to BHA policy, the government must "consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case."[22] Even if BHA's policy is reasonably calculated to provide notice in normal circumstances, the special circumstances of this case triggered BHA's obligation to do something else. Because BHA knew at the time it sent the termination letter that Speelman would not receive it, this letter was not reasonably calculated under the circumstances to provide notice. It was constitutionally insufficient. A reasonably calculated action would have been to send the notice to the Whatcom County Jail in lieu of or in addition to sending it to Speelman's residence.

---

[21] *Jones*, 547 U.S. at 230 (citing *Robinson*, 409 U.S. at 40).

[22] *Jones*, 547 U.S. at 230.

¶17 BHA argues that our Supreme Court's decision in *State v. Nelson*[23] requires a different result. The State suspended Nelson's license to drive after he refused to take a breath test when stopped on suspicion of driving under the influence.[24] Nelson then spent several months at the King County North Rehabilitation Facility (NRF).[25] While there, he sent a letter to the Department of Licensing (DOL), asking how he could have his license reinstated.[26] More than two months later and while Nelson remained in custody, DOL revoked Nelson's license after determining that he was a habitual traffic offender. It sent the order of revocation to Nelson's home address.[27] The postal service returned the order of revocation unclaimed to DOL four days after Nelson's release.[28] A year later, Nelson was arrested and convicted for driving with a suspended or revoked driver's license.[29] He appealed on procedural due process grounds.[30] The court addressed whether DOL deprived Nelson of procedural due process when it sent the revocation notice only to Nelson's address of record and not to NRF, "where DOL knew that Nelson had *previously* been incarcerated."[31] (Emphasis added.)

¶18 After considering the unique circumstances of the case, the court held that notice was adequate and affirmed Nelson's conviction.[32] The court distinguished *Nelson* from *Robinson*: "In [*Robinson*], the Court found that the notice

---

[23] 158 Wn.2d 699, 147 P.3d 553 (2006).

[24] *Nelson*, 158 Wn.2d at 701.

[25] *Nelson*, 158 Wn.2d at 701.

[26] *Nelson*, 158 Wn.2d at 701.

[27] *Nelson*, 158 Wn.2d at 701.

[28] *Nelson*, 158 Wn.2d at 701-02.

[29] *Nelson*, 158 Wn.2d at 702.

[30] *Nelson*, 158 Wn.2d at 701.

[31] *Nelson*, 158 Wn.2d at 702.

[32] *Nelson*, 158 Wn.2d at 705-06.

was inadequate because the State had actual knowledge that the notice would be ineffective and failed to take practicable additional steps to provide effective notice."[33] In *Nelson*, however, "the State did not know that the notice sent to Nelson's address of record was ineffective until after the revocation became operative."[34] The court reasoned Nelson's inquiry sent from NRF two months earlier did not put DOL on notice that Nelson would still be at NRF when it sent the revocation letter.[35] And because Nelson had already been released from NRF by the time DOL learned that notice had been ineffective, DOL did not have an obligation to take additional steps to provide notice.[36] Based on these considerations, the court determined that notice had been reasonably calculated to inform Nelson of DOL's actions.

¶19 BHA cites three reasons why it believes this case is more like *Nelson* than *Robinson*. First, BHA claims that "there is nothing in the record indicating that BHA knew that Plaintiff was incarcerated on *June 2, 2011*, the date the BHA sent the Termination Notice." As previously noted, we disagree. The termination letter itself demonstrates that BHA had actual knowledge that Speelman was in jail at the time the letter was sent.

¶20 Second, BHA contends that it "did not have actual knowledge that notice would not reach Plaintiff personally" because it "did not know that Plaintiff [had] asked Ms. Larsen to simply stack her mail up without opening it." BHA's argument seems to imply that Speelman had an obligation to alert BHA that she had a different address or that she should have had her mail forwarded to the jail. But

[33] *Nelson*, 158 Wn.2d at 705.

[34] *Nelson*, 158 Wn.2d at 705.

[35] *Nelson*, 158 Wn.2d at 705.

[36] *Nelson*, 158 Wn.2d at 705.

"a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation."[37]

¶21 Third, BHA claims that "[a]dequate notice does not mean the BHA needs to verify that Plaintiff actually read the notice." We agree. Due process does not require actual notice. Speelman, however, does not contend otherwise; she simply contends that notice was not reasonably calculated to inform her of BHA's termination decision.

¶22 BHA's three arguments that *Nelson* should apply here are unconvincing. BHA's knowledge that Speelman was incarcerated at the time it sent the notice distinguishes this case from *Nelson*, where the State knew only that Nelson had been previously incarcerated. Because BHA knew that Speelman would not receive the notice at home because she was in jail, *Robinson* controls.

¶23 BHA violated Speelman's procedural due process rights. Therefore, Speelman is likely to prevail on the merits of her claim. Speelman satisfies the first preliminary injunction factor. This, however, does not end our inquiry. Turning to the second and third criteria for the issuance of a preliminary injunction, Speelman must demonstrate that she has a well-grounded fear of immediate invasion of her asserted right and that BHA's actions have resulted or will result in actual and substantial injury.

¶24 Here, Speelman asserts the right to due process before the government interferes with her property interest. She has shown a fear of immediate invasion of that right. Indeed, BHA has already interfered with that right by terminating her federal benefits after giving her defective notice, which effectively deprived her of an opportunity to be heard.

¶25 Speelman has also shown actual and substantial injury. Due to the failure of notice, she missed the deadline to appeal BHA's decision and now faces eviction without the

---

[37] *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983).

benefit of a hearing. As the United States Supreme Court stated in *Goldberg v. Kelly*,[38] the importance of a hearing in situations like this one is paramount:

> "[T]he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal."

¶26 Finally, considering the equities, both the parties and the public have an interest in ensuring that BHA administers its programs lawfully. Contrary to BHA's contention, Speelman is not asking for an exception to be applied to her case. She is asking that she be given the process due to her and everyone else in her situation. Therefore, the equities favor granting Speelman a preliminary injunction.

¶27 Speelman meets the above criteria for a preliminary injunction; the trial court should have granted her motion. Because this issue is dispositive, we do not consider Speelman's additional claims. Nor do we reach the merits of BHA's cross appeal.

*Attorney Fees*

¶28 BHA asks for attorney fees, claiming that Speelman's action is frivolous. "[A] defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the District Court finds 'that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' "[39] "The plaintiff's action must be

---

[38] 397 U.S. 254, 266, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (quoting *Kelly v. Wyman*, 294 F. Supp. 893, 904-05 (S.D.N.Y. 1968)).

[39] *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978)).

meritless in the sense that it is groundless or without foundation."[40] Because Speelman's action has merit, we deny BHA's request.

## CONCLUSION

¶29 Because Speelman meets the preliminary injunction criteria, the trial court erred by denying Speelman's motion for a preliminary injunction. We reverse and remand for further proceedings consistent with this opinion.

Cox and APPELWICK, JJ., concur.

---

[40] *Hughes*, 449 U.S. at 14.