FILED
COURT OF APPEALS
DIVISION II

2014 FEB 25 AM 9: 45

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DELLEN WOOD PRODUCTS, INC., | No. 43636-1-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | PUBLISHED OPINION |
| Respondent. | |

HUNT, J. — Dellen Wood Products, Inc. (Dellen) appeals the superior court's affirmance of the Board of Industrial Insurance Appeals' (Board) decision that Dellen defaulted on its obligations as a self-insured employer and thereby lost its right to its surety funds. Dellen's first argument presents an issue of first impression: whether the superior court erred in construing "default" under the Industrial Insurance Act[1] to mean a self-insured employer's failure to satisfy its legal obligations under the Act, instead of ruling that "default" means only a self-insured employer's failure to pay workers' compensation benefits. Dellen also argues that the superior court erred in ruling that (1) Dellen "defaulted"[2] under the Act even though it intended to "terminate"[3] its self-insured employer obligations under the Act; and (2) the Washington State

---

[1] Title 51 RCW; RCW 51.14.020.

[2] Br. of Appellant at 20.

[3] Br. of Appellant at 22.

No. 43636-1-II

Department of Labor and Industries (Department) did not violate Dellen's due process rights[4] in retaining the excess surety funds.

We hold that as used in section RCW 51.14.020 of the Industrial Insurance Act, "default" means a self-insured employer's failure to satisfy any of its multiple legal obligations under the Act, not solely its failure to satisfy its single obligation to pay workers' compensation benefits. We further hold that substantial evidence supports the superior court's ruling that (1) Dellen defaulted as a self-insured employer when it stopped paying industrial insurance to its injured workers, ceased administering its injured workers' claims, turned over its claim files to the Department to administer, failed to file required reports, and failed to pay industrial insurance assessments; (2) Dellen has no right to recoup the remaining surety funds deposited with the Department; and (3) the Department did not violate Dellen's procedural due process rights because Dellen had (a) no property interest in the proceeds of its surety and (b) appropriate notice and an opportunity to be heard. We affirm.

## FACTS

Beginning in 1986, Dellen Wood Products, Inc., operated as a self-insured employer under the Industrial Insurance Act; Dellen backed its obligation to pay its worker compensation claims directly to its injured employees[5] with a surety in an escrow account. In December 2001,

---

[4] As we explain later, we do not address Dellen's equity argument, which it improperly raises for the first time in its reply brief.

[5] The Industrial Insurance Act allows a self-insured employer to provide workers' compensation benefits directly to its injured workers in the same manner that the Department would pay if the employer had instead paid insurance funds to the Department. To qualify as a self-insured employer under the Act (and to relieve itself from the normal obligation to pay industrial insurance funds to the Department), the employer must demonstrate that it has sufficient financial ability to pay its workers' compensation claims. RCW 51.14.020(1).

2

Dellen ceased operations, sold its manufacturing equipment, and terminated its employees. From January 2002 to December 31, 2005, Dellen continued some operations with "leased" employees. Administrative Record (AR) at 95.

In January 2002, Dellen's Chief Financial Officer, Eugene Olsen, contacted Larry Wilkinson, the Department's self-insured certification manager, asking how the Department could take over the administration of Dellen's ongoing injured employee claims. Wilkinson told Olsen that the Department would take over administration of the claims only if Dellen "defaulted"; Wilkinson advised Olsen to send a notice of "default."[6] Administrative Transcript (AT) at 44.

## I. DELLEN'S INDUSTRIAL INSURANCE ACT DEFAULT

Soon thereafter, on January 18, 2002, Olsen sent the Department a letter (1) giving notice that Dellen was electing to "default" on payment of injured workers' claims under the Act's self-insured employer program,[7] and (2) asking the Department to take over administration of these claims.[8] AR at 111. Dellen provided the Department with a $422,853.81 surety deposit to cover these claims. In response, Wilkinson retrieved Dellen's injured employee claims files and turned

---

[6] Wilkinson did not inform Olsen that by defaulting, Dellen would forfeit all right and interest to its surety bond; nor did Olsen inquire about this subject.

[7] WAC 296-15-125(1) provides:
. . . A default occurs when a self-insured employer no longer provides benefits to its injured workers in accordance with Title 51 of the Revised Code of Washington. A default can be a voluntary action of the self-insured employer, or an action brought on by the employer's inability to pay the obligation.

[8] The letter contains a typographical error: It mistakenly states the year as 2001 instead of 2002.

3

them over to the Department. The Department administered these claims for almost two and a half years until the last Dellen employee claim closed in May 2004.

After Dellen's January 2002 default letter, (1) Dellen did not file quarterly or annual reports with the Department, (2) Dellen did not pay the Department any industrial insurance assessments, and (3) the Department paid Dellen's injured workers' claims. A year later, in January 2003, Wilkinson reported to Dellen that the Department had "assumed jurisdiction" over Dellen's workers' claims and that the surety bond's balance was $403,833.58. Administrative Record Exhibits (ARE) (Ex. 20).

A year later, in 2004, Dellen filed for bankruptcy. In connection with Dellen's bankruptcy proceeding, Wilkinson filed a declaration stating that (1) Dellen had surrendered its self-insurance certification to the Department on December 31, 2001; (2) Dellen had defaulted on its self-insurance obligations on January 31, 2002 (one month later); and (3) as a result of this default, Dellen has lost its right and title to any interest in and right to control its surety. ARE (Ex. 13).

Three years later, on June 19, 2008, Dellen sent the Department a letter requesting (1) the return of all but $20,000 of its remaining surety fund, and (2) treatment of its January 2002 letter as Dellen's written notice to terminate its status as a self-insurer under RCW 51.14.050[9]. Dellen stated that the last day any employees had worked for Dellen had been December 31, 2001, and the last day Dellen had operated as a business had been September 30, 2005. The Department responded on July 28, stating that when Dellen sent its January 18, 2002 letter expressing intent

---

[9] The legislature amended RCW 51.14.050 in 2010. LAWS OF 2010, ch. 8, § 14004. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

to default on its self-insurance obligations, it lost all rights to the surety fund it had provided under RCW 51.14.020(2).

## II. PROCEDURE

On September 19, 2008, the Department issued an order reiterating its July 28 decision that Dellen had lost all rights and interest to its surety fund when it defaulted in January 2002 and asked the Department to administer Dellen's injured employees' claims. Dellen appealed this Department order.

An Industrial Appeals Judge (IAJ) ruled that (1) Dellen had defaulted on its RCW 51.14.020(2) self-insured employer obligations and consequently lost its rights, title to, interest in, and any right to control the surety; (2) Dellen did not comply with WAC 296-15-121(8), which set forth requirements for a former self-insured employer that "terminates" its self-insurer status, instead of "defaults" on its obligations; and (3) therefore, Dellen had "defaulted" under WAC 296-15-125. The IAJ issued an order affirming the Department's September 19 2008 order and ruling that Dellen had forfeited all its interest in the surety fund. Dellen appealed the IAJ's decision to the Board.

The Board affirmed the IAJ's rulings and entered the following conclusions of law: (1) Dellen defaulted on its obligations as a self-insured employer under RCW 51.14.020(2) and therefore, lost all right and title to, any interest in, and any right to control its surety; (2) Dellen had defaulted under WAC 296-15-125; and (3) Dellen did not comply with WAC 296-15-121(8) requirements for "terminating" its self-insurer worker's compensation program. The Board also affirmed the Department's September 19, 2008 order.

5

Dellen petitioned the superior court to review the Board's decision. The superior court made the following oral rulings: (1) "'[D]efault'"[10] under RCW 51.14.020(2)[11] means failure to fulfill a legal obligation, a broader definition than a self-insured employer's failure to pay claims; (2) Dellen defaulted on January 18, 2002[12], when it submitted the letter electing to default and asking the Department to assume administration of worker compensation payments to injured Dellen employees; (3) nevertheless, Dellen did not terminate its self-insurer status under RCW 51.14.050 because it did not comply with the statute's self-insurer notice of termination requirements and other obligations[13]; and (4) Dellen was entitled to a hearing on whether there had been a default, but after that hearing and a determination of default, there was no due process issue.

The superior court also affirmed the Board's September 18, 2008 order, entering the following findings of fact:

> 1.2 On December 31, 2001, Dellen [surrendered] its self-insurance certification because it was no longer a Washington employer and ceased to have any employees.

> 1.3 On January 18, 2002, Dellen's Chief Financial Officer, Eugene Olsen, sent a letter to the Department indicating that Dellen elected to default on its payment of claims under the self-insured program and requested the Department to take over the administration of its claims.

---

[10] Report of Proceedings (RP) (Mar. 30, 2012) at 57.

[11] RCW 51.14.020(2)(a) provides in pertinent part: "In the event of *default* the self-insurer loses all right and title to, any interest in, and any right to control the surety." (Emphasis added).

[12] *See* n.8: The superior court says, "January 18, 2001 letter," in its oral ruling. But as we noted earlier, the letter contained a typographical error and should have read, "January 18, 2002."

[13] RCW 51.14.050 provides the mechanism for terminating self-insurer status as follows: "Any employer may at any time terminate his or her status as a self-insurer by *giving the director written notice*." (Emphasis added).

1.4 On January 31, 2002, Dellen stopped paying industrial insurance benefits to its injured workers and no longer administered its injured workers claims.

1.5 Dellen turned over its claim files to the Department for administration and payment of benefits. Dellen made no further payments or handled its claims after turning the claims over to the Department.

1.6 Since January 18, 2002, Dellen had not filed annual and quarterly reports as required by Title 51 RCW and Department rules.

1.7. Since January 18, 2002, Dellen has failed to pay assessments for the insolvency trust fund, administrative assessments, supplement pension fund, and the asbestosis fund.

1.8 Dellen defaulted on its self-insurance obligations including the payment of benefits to its injured workers, the administration of its claims, the filing of required reports and the payment of self-insured assessments.

1.9 Dellen had appropriate notice and the right to be heard during the appeal process before the Board.

1.10 Dellen had no property interest in the proceeds of its surety upon default.

1.11 Dellen failed to establish that the Department's actions violated Dellen's Due Process rights.

1.12 The Dep[artment] did not give Dellen notice of default or failure to pay any assessment.

1.1[3] While Dellen was not delinquent in payment of any benefit, assessment, or contribution as of Jan[uary] 18, 2002, Dellen intended to default on payments coming due in the future.

CP at 87-88.

The superior court also entered the following conclusions of law:

2.2 Dellen defaulted on its self-insured obligations, including the payment of benefits to its injured workers, the administration of its claims, the filing of required reports and the payment of self-insured assessments.

2.3 Pursuant to RCW 51.14.020(2), Dellen lost all right, title to, any interest in and any right to control the surety.

2.4 The Board's May 16, 20011[sic] Decision and Order is correct for the reasons stated herein and affirmed.

2.5 Dellen was not barred from arguing that the Department violated Dellen's Due Process Rights.

2.6 The Department did not violate Dellen's Due Process rights.

2.8 The September 18, 2008 Department order is correct and is affirmed.

CP at 88.

The superior court entered judgment for the Department and awarded it statutory attorney fees of $200 and interest from the date of the judgment's entry. Dellen appeals.

ANALYSIS

Dellen argues that (1) the Board and the superior court erred in misinterpreting "default" for purposes of the self-insured employer portions of Washington's Industrial Insurance Act; and (2) Dellen did not "default" for purposes of RCW 51.14.020(2)(a), under which a defaulting self-insured employer loses all right to the surety it provided (to secure its financial obligations to its injured employees) when the self-insured employer turns over administration of its injured employees' claims to the Department. Br. of Appellant at 14, 20. We disagree. Although "default" under RCW 51.14.020 includes a self-insured employer's failure to pay workers' compensation benefits and assessments, this is not the only obligation for which a self-insured employer's failure to satisfy will result in default under the Act. We affirm the superior court's rulings that Dellen defaulted and that the Department did not violate Dellen's due process rights in retaining the surety fund after Dellen defaulted.

8

## I. "DEFAULT" UNDER THE INDUSTRIAL INSURANCE ACT

Dellen argues that the Board and the superior court erred in interpreting "default" for purposes of RCW 51.14.020(2)(a) as occurring when a self-insured employer stops paying workers' compensation benefits or assessments. Br. of Appellant at 18. We disagree.

Both parties agree that Washington's Industrial Insurance Act[14] does not define "default." They cite no case law expressly providing a definition. Thus, the definition of "default" for purposes of RCW 51.14.020 is an issue of first impression in Washington.

### A. Standard of Review

We review issues of statutory construction de novo, with the primary goal of carrying out legislative intent. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). The legislative intent of Title 51 RCW, the Industrial Insurance Act, is to provide "sure and certain relief for workers . . . injured in their work." RCW 51.04.010. We do not construe an unambiguous statute where plain words do not require construction. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999). Instead, we discern a statute's plain meaning from the ordinary meaning of the language at issue, the context of the statutory provision, related

---

[14] A worker injured during the course of employment may file a claim for benefits under Washington's Industrial Insurance Act. Either the State or a self-insured employer administers the injured worker's claim. RCW 51.14.020, .030; ch. 296-15 WAC. An employer has a duty to secure the payment of its injured workers' compensation by (1) insuring the payment of benefits from the State fund; or (2) qualifying as a self-insurer under Title 51 RCW. RCW 51.14.010. To qualify as a self-insured employer, an employer must first establish that it has sufficient financial ability to pay workers' compensation benefits and assessments under the Act. RCW 51.14.020(1). The Department can require a self-insured employer to provide a surety in an amount sufficient to ensure payment of reasonably foreseeable compensation and assessments for the employer's injured workers. RCW 51.14.020(2).

provisions, and the statutory scheme as a "whole." *State v. Engel,* 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

### B. Reference to Other Statutory and Regulatory Language

Because the Act does not define "default," we look to other statutory provisions for guidance. For example, the Act describes what happens after a self-insured employer "defaults"[15] on "*any obligation* under this title." RCW 51.14.060(1)[16] (emphasis added). Use of the phrase "any obligation under this title" shows the legislature's intent to encompass within "default" a self-insured employer's failure to pay injured workers' compensation benefits and industrial insurance assessments, one of several obligations listed under the Act.[17]

Consistent with this conclusion, Dellen cites WAC 296-15-181 and WAC 296-15-121(1) as addressing specific instances when a default results from a self-insured employer's failure to pay workers' compensation benefits. WAC 296-15-125(1),[18] for example, provides that a

---

[15] As an alternative to defaulting under RCW 51.14.060, an employer may "terminate" its self-insured status under RCW 51.14.050. As we explain later in this analysis, Dellen did not elect this option.

[16] The legislature amended RCW 51.14.060 in 2010. LAWS OF 2010, ch. 213, § 2. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[17] "Default" can also encompass, for example, a self-insured employer's failure to meet its other legal obligations under chapter RCW 51.14, such as its duty to maintain records (RCW 51.14.110), its duty to maintain an insolvency trust (RCW 51.14.077), and its special duties after termination of self-insured employer status (WAC 296-15-121(8)).

[18] WAC 296-15-125 provides in full:
> (1) What is a default? A default occurs when a self-insured employer no longer provides benefits to its injured workers in accordance with Title 51 of the Revised Code of Washington. A default can be a voluntary action of the self-insured employer, or an action brought on by the employer's inability to pay the obligation.

default occurs when a self-insured employer no longer provides benefits to its injured workers "in accordance with Title 51 of the Revised Code of Washington." Similarly, the language of WAC 296-15-181(1) contemplates default as encompassing a self-insured employer's failure to pay worker compensation benefits (*unless* the default results from a "claims administration decision").[19]

---

(2) What happens when the department first learns a self-insured employer has defaulted on its obligation? The department first corresponds with the self-insured employer to determine if the self-insurer will resume the provision of benefits. If the self-insurer does not respond to the department and resume the provision of benefits within ten days, the self-insured employer is determined to have defaulted.

(3) What happens when the department confirms that a self-insurer has defaulted on its obligation? There are two actions that the department takes when a default by a self-insured employer is confirmed:

    (a) First, the department assumes jurisdiction of the claims of the defaulting self-insurer and begins to provide benefits to those injured workers.

    (b) Second, the department makes demand upon the surety provided by that self-insurer for the full amount of the surety. The proceeds of the surety are deposited with the department and accrue interest, which will be used to supplement the surety in providing benefits to those injured workers.

(4) What happens to a self-insured employer's certification when it defaults? The employer surrenders its self-insurance certification when it defaults. Any remaining employment in the state would need industrial insurance coverage through the state fund effective with the default by the employer.

[19] WAC 296-15-181(1) provides:
    . . . When a [self-insurer] stops paying workers' compensation benefits or assessments, *and the default is not due to a claims administration decision*, the department will take over its surety and claim.
(Emphasis added).

We also look to other jurisdictions' workers' compensation statutes that define "default" by self-insured employers.[20]  Like Washington's Act, Mississippi's workers' compensation act, for example, allows employers to self-insure. *See* MISS. CODE ANN. § 71-3-151 to -181.  A self-insurer in Mississippi "defaults" when it fails to fulfill any of its multiple legal obligations under Mississippi's Act, including its workers' compensation benefits:

> "Self-insurer in default" means an individual self-insurer or a group self-insurer as defined by this chapter that has defaulted or failed for any reason to satisfy *any of its obligations* under the Workers' Compensation Law, *including, without limitation*, all obligations for payment of indemnity compensation, disability, expenses of medical, hospital, surgical, rehabilitation and other services, death benefits and funeral expenses, whether such default or failure is the result of insolvency or bankruptcy or receivership or otherwise.

MISS. CODE ANN. § 71-3-157(f) (emphasis added).  Other states such as Virginia, Georgia, Louisiana, and South Dakota have similarly adopted broad interpretations of "default" to encompass a self-insured employer's failure to comply with various enumerated obligations under their respective workers' compensation acts, including failure to pay injured employees workers' compensation benefits. *See* GA. CODE ANN. § 34-9-381; LA. REV. STAT. ANN. § 23:1168.3; S.D. CODIFIED LAWS § 62-5-10; W. VA. CODE § 5A-3-10a(3).

Considering Washington's statutory scheme as a whole, the related WAC provisions, and other jurisdictions' analogous statutes, we hold that a self-insured employer's "default" under Washington's Industrial Insurance Act encompasses a self-insured employer's failure to satisfy any of its multiple legal obligations under the Act, not solely its failure to pay workers' compensation benefits and assessments.

---

[20] In addressing an issue of first impression, we may look to other jurisdictions for guidance. *See In re Dependency of M.J.L.*, 124 Wn. App. 36, 40, 96 P.3d 996 (2004).

## II. SUBSTANTIAL EVIDENCE SUPPORTS THAT DELLEN "DEFAULTED" UNDER THE ACT

Dellen next argues that the Board and the superior court erred in concluding that it (Dellen) "defaulted" under the Act because (1) it intended to "terminate" its self-insurance obligations, not to declare or to be in "default" under the Act; (2) it was current on all its self-insurance obligations, even when it ceased being a self-insured employer; (3) it intended to continue making "'whatever payments were required'"[21] to the Department; (4) it had provided a surety in excess of its injured workers' claims; and (5) it used the term "default" in its letter to the Department only because the Department had so instructed. Reply Br. of Appellant at 3. These arguments fail.

### A. Standard of Review

In reviewing a Board decision under the Industrial Insurance Act, a superior court considers the issues de novo, relying on the certified Board record. *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006), RCW 51.52.115. Our review of a superior court's decision is limited to examining the Board record to determine whether substantial evidence supports the superior court's de novo review findings and whether the court's conclusions of law flow from those findings. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999). When reviewing factual issues, the substantial evidence standard is highly deferential to the agency fact finder. *Chandler v. Office of Ins. Comm'r*, 141 Wn. App. 639, 648, 173 P.3d 275 (2007), *review denied*, 163 Wn.2d 1056 (2008). We do not weigh the evidence or substitute our judgment about witness credibility for that of the agency. *Chandler*, 141 Wn. App. at 648.

---

[21] Reply Br. of Appellant at 3 (quoting AT at 44).

B. Dellen "Defaulted" under the Act

Dellen challenges the superior court's findings of fact that it "defaulted" on its obligations and that Dellen did not "terminate" its status as a self-insured employer under the Act. Dellen argues that the superior court erred in entering these findings because (1) Dellen defaulted on paying its employees benefits and after ending its status as a self-insured employer, (2) Dellen failed to file annual or quarterly reports, (3) Dellen failed to pay assessments, and (4) Dellen's January 2002 letter informing the Department of its election to "default" did not constitute a default under the Act because Dellen used the word "default" only because of the Department's instructions and Dellen instead intended the letter to be a notice of "termination" of self-insurer status under RCW 51.14.050. Br. of Appellant at 20. These arguments fail.

1. Dellen's letter elected "default"

Under WAC 296-15-125(1), a "default" occurs when a self-insured employer no longer provides benefits to its injured workers in accordance with Title 51 RCW. A default can be a "voluntary action" of the self-insured employer or an action precipitated by the self-insured employer's inability to pay its industrial insurance obligations. WAC 296-15-125(1). When such a default occurs, the Department takes over administration of the former self-insured employer's injured workers' benefits claims.[22] RCW 51.14.060(2).

In contrast, when an employer "terminates" its self-insured status, the Department does not take over the employer's injured workers' benefits claims. Instead, the former self-insured employer remains responsible for managing claims for its employees' injuries that occurred

---

[22] In connection with the Department's taking over administration of a former self-insured employer's injured workers' benefits claims, RCW 51.14.020(2) expressly provides that such a defaulting self-insured employer loses all rights and title to its surety fund.

when it was self-insured; the employer can pay a third party administrator to manage these claims or continue to maintain staff to manage these claims.[23] RCW 51.14.030[24]; WAC 296-15-121(8). To qualify as a "termination" under RCW 51.14.050, a self-insured employer must provide written notice of "termination" to the Department:

> Any employer may at any time terminate his or her status as a self-insurer by giving the [Department] director written notice stating when, not less than thirty days thereafter, such termination shall be effective, provided such termination shall not be effective until the employer either shall have ceased to be an employer or shall have filed with the director for state industrial insurance coverage under this title.

RCW 51.14.050(1). But Dellen's January 2002 letter said nothing about "terminating" its status as a self-insurer, as the statute requires if it was electing termination. Instead, Dellen's letter expressly stated that it elected to "default":

> Per our discussion, this letter is to notify the Department that Dellen Wood Products, Inc, *elects to default* on its payment of claims under the self insured program and requests that the Department take over administration of the claims.

AR at 111 (emphasis added). Dellen argues that it used the word "default" only because the Department instructed it to default. Br. of Appellant at 20. But substantial evidence supports the superior court's contrary finding of Dellen's intent to default: Dellen called the Department in 2001 and asked whether the Department could *take over administration* of Dellen's injured employee claims. The Department responded saying that to take over administration of these

---

[23] Unlike a default, termination of self-insured status does not result in the employer's automatic loss of right and title to its surety fund. WAC 296-15-121(9); RCW 51.14.020(2).

[24] The legislature amended RCW 51.14.030 in 2005. LAWS OF 2005, ch. 1145, § 3. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

claims, Dellen would have to default.[25] Given that the only way for the Department to take over a former self-insured employer's worker's compensation claims is if the employer defaults under chapter 51.14 RCW, Dellen's only option under the law to accomplish his request was to default. Consistent with the law and the Department's advice, Dellen expressly elected to default in its January 2002 letter.[26]

2. Dellen did not "terminate" its self-insured employer status under RCW 51.14.050

An employer who elects to terminate its self-insured status under RCW 51.14.050 must nevertheless continue to fulfill ongoing statutory obligations under the Act, such as (1) maintaining money, securities, or surety bonds the Department deems sufficient to cover the employer's entire liability under RCW 51.14.050(2); (2) paying benefits on injured worker claims incurred during its preceding period of self-insurance; (3) filing quarterly and annual reports, unless the employer requests and receives release from such reporting requirements; (4) paying insolvency trust assessments for three years after terminating its self-insurer status; and

---

[25] In contrast, termination would not have allowed the Department to take over Dellen's claims. *See* WAC 296-15-121(8). Nor did Dellen meet the basic statutory requirements for filing a notice of termination. RCW 51.14.050(1). As the superior court noted, and Dellen conceded, Dellen did not provide written notice stating that in not less than 30 days, the termination of its self-insurer status would be effective:
> [THE COURT:] But you didn't give the [Department] director written notice stating when, not less than 30 days thereafter, such terminations would be effective.
> [DELLEN'S COUNSEL:] We did not say "30 days" in the letter.
RP (Mar. 30, 2012) at 28.

[26] That Dellen later claimed to have misunderstood or to have had a different intent than that which it stated in this letter does not undermine the superior court's or the Board's findings.

(5) paying all expenses for a final audit of its self-insurance program. WAC 296-15-121(8).[27]

The record supports the superior court's findings that Dellen failed to meet these obligations for termination of self-insurance status.

a. Failure to continue paying workers' compensation benefits

Under WAC 296-15-121(8)(a), an employer that terminates its self-insured status must pay benefits on already pending workers' compensation claims incurred during its period of self-insurance and administer workers' claim re-openings and new claims filed during the period of self-insurance.[28] WAC 296-15-121(8)(a). Dellen asserts it continued to provide for payment of

---

[27] WAC 296-15-121(8) provides that when "a self insurer ends its self insured workers' compensation program," such "former" self-insured employer "*must continue to do all* of the following":

> (a) Pay benefits on claims incurred during its period of self insurance. Claim re-openings and new claims filed for occupational diseases incurred during the period of self insurance remain the obligation of the former self insurer.
> (b) File quarterly and annual reports as long as quarterly reporting is required. A former self insurer may ask the department to release it from quarterly reporting after it has had no claim activity with the exception of pension or death benefits for a full year.
> (c) Provide surety at the department required level. The department may require an increase in surety based on annual reports as they continue to be filed. Surety will not be reduced from the last required level (while self insured) until three full calendar years after the certificate was terminated. A bond may be cancelled for future obligations, but it continues to provide surety for claims occurring prior to its cancellation.
> (d) Pay insolvency trust assessments for three years after surrender or withdrawal of certificate.
> (e) Pay all expenses for a final audit of its self insurance program.

(Emphasis added).

[28] These pre-existing worker compensation benefits payments cannot come from the employer's surety fund if the employer is "terminating" its self-insured status under the Act. Rather, these payments can come from the surety fund only if the self-insured employer "defaults." *See* RCW 51.14.060, WAC 296-15-121(1)(b).

injured employee benefits and assessments and, therefore, it "terminat[ed]" its self-insured status under the Act (rather than "default[ing]"). Br. of Appellant at 22. Dellen's assertion that it continued payments, however, stems from its provision of a "$422,853.81" surety to the Department when Dellen defaulted and asked the Department to take over administration of Dellen's injured employees' claims. Br. of Appellant at 22. Provision of this surety neither transformed Dellen's default into a termination of self-insured status nor fulfilled its obligations for termination of self-insured status under the Act.

As we have previously noted, WAC 296-15-121(8)(a) requires an employer "terminating" its self-insured status to continue using its own funds to pay benefits on injured workers' claims previously incurred during its self-insured status; in other words, a former self-insured employer that "terminates" its self-insured status cannot make these payments from the surety it provided to the Department. Therefore, contrary to Dellen's assertion, its having provided the Department with the $422,853.81 surety does not constitute a payment of benefits under WAC 296-15-121(8)(a) for purposes of showing that Dellen complied with statutory termination claims payment requirements.

Dellen further asserts that the payment of workers' compensation benefits is the only obligation that RCW 51.14.050 imposes on former self-insured employers. This assertion is also incorrect. WAC 296-15-121(8) expressly states that an employer electing to terminate its self-insured status must comply with *all* the requirements listed under WAC 296-15-121(8), including taking responsibility for *new* claims. WAC 296-15-121(8)(a). Here, however, after sending its January 2002 letter electing default, Dellen turned over its injured worker claims files to the Department for administration of its injured workers' claims. And, as Dellen concedes,

18

after sending this letter, it stopped administering its own injured workers' claims and stopped paying benefits.

Because Dellen did not pay benefits on its injured workers' claims incurred during its previous self-insurance period and it did not administer claim re-openings or new claims, we hold that Dellen did not comply with WAC 296-15-121(8)(a) and, thus, as the superior court ruled, did not terminate its self-insured status under the Act.

2. Failure to file reports to the Department

Under WAC 296-15-121(8)(b), an employer terminating its self-insured status must continue to file quarterly and annual reports with the Department. Dellen argues that the superior court erred in finding that it defaulted, based on Dellen's failing to file annual or quarterly reports, because, Dellen asserts, no applicable statute or regulation defines "default" as a failure to file reports. Br. of Appellant at 25. This argument also fails.

Dellen concedes that it did not file quarterly and annual reports with the Department; again, Dellen asserts that the Department told it not to do so. The record does not support this assertion. Instead, the record shows that the Department did not notify Dellen to continue filing reports because Dellen had sent the Department a letter electing to default and asking the Department to take over administration of Dellen's workers' compensation benefit payments; accordingly, the Department understood Dellen to be in default status, for which continued reporting was not required.[29]

---

[29] In contrast, had Dellen not elected to default, and had elected instead to terminate its self-insured status, the Department would have sent a notice of late reporting.

Furthermore, WAC 296-15-121(8)(b) provides that the Department may release an employer terminating its self-insured status from its reporting requirement when no activity occurs for a full year on any of the employer's injured worker claims. Dellen's last injured employee claim activity occurred in 2004; thus, if Dellen had terminated its self-insured status (instead of defaulting), it would have been required to file quarterly reports until 2005. Accordingly, Dellen's failure to file such reports (1) would have constituted a failure to comply with WAC 296-15-121(8)(b) termination requirements; and (2) further supports the superior court's finding that Dellen did not terminate its self-insured status, but instead was in default.

### 3. Failure to pay assessments

WAC 296-15-121(8)(d) also requires a former self-insured employer to pay insolvency trust assessments for three years after surrender or withdrawal of its self-insured certificate. Nothing in the WAC or Title 51 RCW states that the Department must give a former self-insured employer notice when that employer fails to pay a required assessment; on the contrary, the regulations state only that a former self-insured employer has a duty to pay assessments[30], regardless of whether it receives notice from the Department. Absent any authority requiring the Department to give a former self-insured employer notice of failure to pay an assessment, Dellen's argument fails. The record shows that Dellen failed to pay any assessments after

---

[30] *See* former WAC 296-15-221(4)(a)(iii)(B) (2001) (employers no longer self-insured must pay adjusted assessment rate until one year after all self-insurance liabilities and responsibilities are terminated); former WAC 296-15-221(4)(a)(iv)(B) (2001) (self-insurers must maintain minimum balance of $200,000 in their "second injury fund"); RCW 51.14.077; former WAC 296-15-221(4)(a)(v) (2001) (insolvency trust members who voluntarily surrender their self-insurance certificates must continue to pay an assessment for three years after the date of surrender).

January 2002. Thus, we hold substantial evidence supports the superior court's finding that Dellen failed to pay any assessments.

We hold that substantial evidence supports the Board's and the superior court's findings that Dellen's letter expressed its intent to default and that Dellen's subsequent actions were consistent with its expressed intent to default.[31] We further hold that the superior court's findings support its conclusions of law that Dellen defaulted on its obligations as a self-insured employer and that its actions did not qualify as a termination under RCW 51.14.050.

### III. PROCEDURAL DUE PROCESS

Dellen next argues that the superior court erred in ruling that the Department did not violate its procedural due process rights in retaining its surety fund after Dellen defaulted.[32]

---

[31] The superior court did not enter this finding in its judgment order. But during the hearing, it stated:

> . . . I'm prepared to find the time of default as the time of submission of what I think you identified as Exhibit 2, the letter from Dellen dated January 18, [2002]. To me, that's clearly a statement of Dellen's intent, and all of the actions Dellen took after that were consistent with that statement of intent. And so I would find that as the date of default, and at that moment in time, under [RCW] 51.14.020, the fund transfers to the Department.
>
> . . .
>
> I can only determine which of these two options the actions of the parties support, and the only one that makes sense to me is default, because the other one, the termination, requires this notice with particular requirements. That clearly wasn't done in this case. And it also anticipates that Dellen will continue to fulfill other certain obligations, which Dellen did not do.

RP (Mar. 30, 2012) at 57-58.

[32] Dellen also argues for the first time in its reply brief that (1) it is entitled to an immediate refund of its surety as a matter of equity; and (2) under WAC 296-15-121(9), it is "entitled" to a refund in May 2015 because an employer is entitled to such a refund at least ten years after release from monthly reporting requirements. Reply Br. of Appellant at 14. We do not address arguments raised for the first time in reply briefs. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Dellen asserts that the Department violated its right to due process by failing to give notice that it had forfeited its entire surety fund and failing to provide a meaningful hearing "at a meaningful time." Br. of Appellant at 27 (citations omitted). Again, this argument fails.

Constitutional issues are issues of law, which we review de novo. *State v. Blilie*, 132 Wn.2d 484, 489, 939 P.2d 691 (1997). The due process clause of the Washington Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." WASH CONST. art. I, § 3. Procedural due process refers to the procedures that the government must follow before it deprives a person of life, liberty, or property. *See Nieshe v. Concrete Sch. Dist.*, 129 Wn. App. 632, 640, 127 P.3d 713 (2005). "'When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation.'" *Speelman v. Bellingham/Whatcom County Hous. Authorities*, 167 Wn. App. 624, 631, 273 P.3d 1035 (2012) (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006)). Due process does not require actual notice; rather, it requires the government to provide "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Speelman*, 167 Wn. App. at 631 (internal quotation marks omitted) (quoting *Jones v. Flowers*, 547 U.S. 220, 226, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006)).

A claimant alleging deprivation of due process must first establish a legitimate claim of entitlement. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 142, 744 P.2d 1032, 750 P.2d 254 (1988). Legitimate claims of entitlement entail vested liberty or property rights. *Haberman*, 109 Wn.2d at 142 (citing *In re Marriage of MacDonald*, 104 Wn.2d 745, 748, 709

P.2d 1196 (1985)). A vested right must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another. *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 414, 869 P.2d 28 (1994).

Here, Dellen did not have a legitimate claim of entitlement to the surety, which it had provided when it defaulted and asked the Department to take over administration of Dellen's injured workers' claims. Our state legislature expressly provided that a self-insured employer defaulting on its Act obligations loses all right and title to, any interest in, and any right to control the surety it provided under RCW 51.14.020(2) to secure payment of its employees' workers' compensation claims:

> *In the event of default the self-insurer loses all right and title to, any interest in, and any right to control the surety.* The amount of surety *may* be increased or decreased from time to time by the director. The income from any securities deposited *may* be distributed currently to the self-insurer.

RCW 51.14.020(2) (emphasis added). Thus, under Washington's Industrial Insurance Act, when Dellen defaulted on its obligations as a self-insured employer, it lost all "right and title to, any interest in, and any right to control" its surety.[33] RCW 51.14.020(2). Dellen's loss of its title to the surety was not by virtue of some governmental action; on the contrary, this loss was a result

---

[33] Moreover, WAC 296-15-121(9)(a) provides only that the Department "may consider" releasing a surety to a former self-insurer, or its successor, if all claims against the self-insurer are closed and the self-insurer has been released from quarterly reporting for at least ten years. This regulation's use of the permissive words "may" and "consider," however, imply that such return of a surety is not mandatory and that, instead, such decision falls within the Department's discretion. Thus, under the plain language of this regulation, Dellen is not "entitled" to a return of its surety.

of its election instead to default as a self-insurer under the Act and to turn over administration of its workers' compensation benefits to the Department to pay on Dellen's behalf from Dellen's surety fund.

Furthermore, again contrary to Dellen's assertions, Dellen did have meaningful notice and an opportunity to be heard. By virtue of the language of the Act and Dellen's communications with the Department, Dellen had, at a minimum, constructive notice that a self-insured employer's "default" results in forfeiture of its surety: When Dellen contacted the Department to inquire how the Department could take over administration of Dellen's workers' compensation claims, the Department told Dellen this could happen if Dellen "defaulted," which Dellen then elected to do so. AT at 44. In addition, the consequences of a self-insured employer's default are plainly stated in RCW 51.14.020(2)[34]; and it is well settled that a person is presumed to know the law such that ignorance of the law is not a defense.[35] *Harman v. Dep't of Labor & Indus.*, 111 Wn. App. 920, 927, 47 P.3d 169 (2002). And this statutory notice was reasonably calculated as a matter of law to "'apprise interested parties'"[36] about the default and surety forfeiture procedures under the Act.

---

[34] As Wilkinson later explained in his declaration, Dellen defaulted and, under RCW 51.14.020(2), such a defaulting self-insurer loses its right and title to its surety.

[35] We note that Dellen was not an unsophisticated entity: To qualify as a self-insured employer it had to show that it had the financial capacity to self-insure its employees. *See* RCW 51.14.020(1).

[36] *See Speelman*, 167 Wn. App. at 631 (quoting *Jones*, 547 U.S. at 226).

Moreover, during Dellen's 2005 bankruptcy proceeding, Wilkinson provided a declaration that Dellen had defaulted and that under RCW 51.14.020(2) a defaulting self-insurer loses its right and title to its surety. Thus, Wilkinson's declaration also served as constructive notice of the consequences of Dellen's default under the Act, including forfeiture of its surety. Dellen also had an opportunity to be heard when, in 2008, it asked for a release of its surety and the Department rejected this request. Dellen had received, and exercised, its opportunity to be heard by an IAJ, the Board, and the superior court. We hold that Dellen had notice that its default would result in forfeiture of its surety and that the Department did not violate Dellen's procedural due process rights.

We affirm.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Penoyar, J.

25