# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL E. MURRAY, | No. 48870-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR & INDUSTRIES, | PUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Michael E. Murray appeals the superior court's order granting the Department of Labor & Industries' (Department) motion for summary judgment affirming the Board of Industrial Insurance Appeals' (Board) decision to deny payment for his hip surgery. The Department's decision was based on the Health Technology Clinical Committee's (HTCC) decision concluding that Murray's proposed hip surgery was not a covered procedure under state health care law. Therefore, Murray was not entitled to an individualized inquiry as to whether the surgery was proper and necessary medical treatment. Murray argues that the delegation of authority to the HTCC is unconstitutional, thus, an HTCC decision cannot preclude review of an individualized inquiry into whether a specific medical treatment is proper and necessary. We hold that because there are appropriate procedural safeguards to control arbitrary action and prevent the abuse of discretionary power, the legislature's delegation of authority to the HTCC is constitutional.

Murray also argues that we should overrule our holding in *Joy v. Department of Labor and Industries*.[1] He also argues that his procedural and substantive due process rights were violated because he was denied a review of the HTCC decision. We decline to overrule our holding in *Joy*. And, we hold that Murray has no vested right protected by due process, therefore, his due process claim fails. Accordingly, we affirm the Board's order denying Murray's claim for hip surgery.

FACTS

In 2009, Murray injured his right hip at work. The Department allowed his claim. In 2013, Murray sought authorization for surgical treatment of Femoral Acetabular Impingement (FAI) resulting from a labral tear in his right hip. The Department denied Murray's claim because, in 2011, the HTCC determined that the surgical treatment was not a covered benefit.

Murray appealed the Department's decision to the Board. The Department moved for summary judgment. The Board concluded that the HTCC's decision could not be overruled by the Board and affirmed the Department's decision. Murray appealed the Board's decision to the superior court.

The Department moved for summary judgment before the superior court. Murray filed a cross motion for summary judgment. The superior court denied Murray's motion for summary judgment and granted the Department's motion for summary judgment. Murray appeals.

---

[1] 170 Wn. App. 614, 285 P.3d 187 (2012). *Joy* held that an HTCC determination that a particular medical technology is not a covered treatment, "is a determination that the particular health technology is not medically necessary or proper in *any* case." 170 Wn. App. at 624.

No. 48870-1-II

## ANALYSIS

### I. LEGAL PRINCIPLES

"RCW 51.52.110 and RCW 51.52.115 govern judicial review of matters arising under the Industrial Insurance Act." *Stelter v. Dep't. of Labor & Indus.*, 147 Wn.2d 702, 707, 57 P.3d 248 (2002). "When a party appeals from a board decision, and the superior court grants summary judgment affirming that decision, the appellate court's inquiry is the same as that of the superior court." *Stelter*, 147 Wn.2d at 707. A summary judgment motion will be granted only if after viewing all the pleadings, affidavits, depositions, admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, it can be said that (1) there is no genuine issue of material fact, (2) all reasonable persons could reach but one conclusion, and (3) the moving party is entitled to judgment as a matter of law. *Walston v. Boeing Co.*, 181 Wn.2d 391, 395, 334 P.3d 519 (2014).

Under the Industrial Insurance Act[2] (IIA), a worker is entitled to medical treatment for work related injuries. RCW 51.36.010. Once a worker establishes that he or she is entitled to compensation, "he or she shall receive proper and necessary medical and surgical services." RCW 51.36.010(2)(a).

### II. HTCC STATUTES

In 2006, the legislature created the HTCC. RCW 70.14.090. The HTCC is comprised of eleven members appointed by the Health Care Authority (HCA) administrator. RCW 70.14.090. The eleven members of the HTCC are practicing physicians and licensed health professionals who

---

[2] Title 51 RCW.

3

use health technology in their scope of practice. RCW 70.14.090. The HTCC reviews health technology to determine:

> (a) The conditions, if any, under which the health technology will be included as a covered benefit in health care programs of participating agencies; and (b) if covered, the criteria which the participating agency administering the program must use to decide whether the technology is medically necessary, or proper and necessary treatment.

RCW 70.14.110(1). The HTCC is required to make its determinations "in an open and transparent process" considering "evidence regarding the safety, efficacy, and cost-effectiveness of the technology." RCW 70.14.110(2)(a). The HTCC is also required to provide an opportunity for public comment. RCW 70.14.110(2)(b); RCW 70.14.130. And although the HTCC is not an agency subject to the Administrative Procedure Act (APA), chapter 34.05 RCW, it is subject to the Open Public Meetings Act of 1971, chapter 42.30 RCW. RCW 70.14.090(4), (5).

All participating agencies under the HCA, including the Department, are required to comply with the HTCC's determinations. RCW 70.14.120. "A health technology not included as a covered benefit . . . shall not be subject to a determination in the case of an individual patient as to whether it is medically necessary, or proper and necessary treatment." RCW 70.14.120(3). However, RCW 70.14.120(4) provides:

> Nothing in [this chapter] diminishes an individual's right under existing law to appeal an action or decision of a participating agency regarding a state purchased health care program.

Health technologies for which the HTCC has already made a determination shall be considered for rereview after eighteen months. RCW 70.14.100(2). The HCA administrator selects technologies for rereview if new evidence has become available that could change the HTCC's determination. RCW 70.14.100(2).

III. DELEGATION OF LEGISLATIVE AUTHORITY

Murray argues that the legislature has unconstitutionally delegated its power to the HTCC by granting it unreviewable authority. The Department argues that the legislature's delegation of authority is constitutional because the constitutional writ of certiorari and statutory procedural safeguards are sufficient to prevent arbitrary administrative action or abuse of discretionary power. We hold that there are appropriate procedural safeguards to control arbitrary action and prevent the abuse of discretionary power, therefore, the legislature's delegation of authority to the HTCC is constitutional.

"'The Legislature is prohibited from delegating its purely legislative functions[] to other branches of government." *Auto. United Trades Org. v. State*, 183 Wn.2d 842, 859, 357 P.3d 615 (2015) (*AUTO*) (quoting *Diversified Inv. P'ship v. Dep't of Soc. & Health Servs.*, 113 Wn.2d 19, 24, 775 P.2d 947 (1989). However, the well-established rule is that the legislature may delegate its power to an administrative body "when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that *procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power*." *Barry & Barry, Inc. v. Dep't of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972).

But Murray argues that there are not adequate procedural safeguards to control the HTCC's exercise of discretion.[3] The Department argues that adequate procedural safeguards exist because

---

[3] RCW 70.14.090-.110 provide standards and guidelines for the HTCC's determinations regarding heath technology. Murray does not dispute that these standards are adequate to satisfy the first part of the *Barry & Barry* test for constitutional delegation of legislative authority.

an HTCC determination can be challenged through a constitutional writ of certiorari and because of the numerous procedural safeguards imposed by statute. But Murray contends that the constitutional writ of certiorari is insufficient because it is too narrow in scope. Instead, Murray asserts that adequate procedural safeguards require multiple avenues for review and, at a minimum, require the review provided for in the APA. However, we hold that individualized review of discretionary decisions delegated to an administrative body is not required for the legislature to constitutionally delegate authority to an administrative body. *Barry & Barry* only requires that "procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power." *Barry & Barry*, 81 Wn.2d at 159 (emphasis omitted). Because there are appropriate procedural safeguards here to control arbitrary action and prevent abuse of discretionary power, the legislature's delegation of authority to the HTCC is constitutional.

The Department relies heavily on the constitutional writ of certiorari to support its argument that there are adequate procedural safeguards. Article IV, section 6 of our state constitution recognizes the distinct right to petition a court for a writ of certiorari. "The funda-mental purpose of the constitutional writ of certiorari is 'to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority.'" *Coballes v. Spokane County*, 167 Wn. App. 857, 866, 274 P.3d 1102 (2012) (internal quotation marks omitted) (quoting *Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 769, 261 P.3d 145 (2011)). Review under a constitutional writ of certiorari is limited to whether the challenged action was "'arbitrary, capricious, or illegal, thus violating a claimant's fundamental right to be free from such action.'" *Coballes*, 167 Wn. App. at 867 (footnote and internal quotation marks omitted) (quoting *Fed. Way Sch. Dist.*, 172 Wn.2d at 769).

The constitutional writ of certiorari provides a procedure for a court to review the HTCC's actions for legality and to specifically review whether the HTCC's actions are arbitrary or capricious. That is all that is required by *Barry & Barry*. *Barry & Barry*, 81 Wn.2d at 159. Murray asserts that the delegation of legislative authority is unconstitutional because there is no mechanism for reviewing the *application* of the action to a particular person. But *Barry & Barry* does not require individualized review of the application of an administrative decision, it only requires procedural safeguards to control arbitrary action and prevent abuse of discretionary power. *Barry & Barry*, 81 Wn.2d at 159.

Murray also argues that the writ of certiorari is insufficient process because a writ of certiorari is limited to determining jurisdiction. But Murray's reading of the word jurisdiction is too restrictive. The scope of jurisdiction for the purpose of a constitutional writ encompasses whether an action is "'arbitrary, capricious, or illegal." *Coballes*, 167 Wn. App. at 867 (footnote and internal quotation marks omitted) (quoting *Fed. Way Sch. Dist.*, 172 Wn.2d at 769). Therefore, the constitution writ of certiorari provides for review of the HTCC's execution of the authority delegated to it by the legislature.

Murray implies that a constitutional delegation of authority may only be constitutional if the safeguards imposed are under the APA. We disagree. Murray conflates the standards of review for adjudicative (or quasi-judicial) action with the standards of review for rulemaking. Here, the HTCC is not performing an adjudicative function, but is performing a rulemaking function. The APA provides:

> In a proceeding involving review of a rule, the court shall declare the rule invalid only if it finds that: The rule violates constitutional provisions; the rule exceeds statutory authority of the agency; the rule was adopted without compliance with statutory rule-making procedures; or the rule is arbitrary and capricious.

RCW 34.05.570(2)(c). In this context, the APA's scope of review of rulemaking authority is no broader than that of a constitutional writ of certiorari.

Murray also relies on a single sentence from *AUTO* which he alleges requires that there be multiple procedural safeguards in place for a delegation of legislative authority to be constitutional. But Murray takes the sentence out of context. In *AUTO*, the court stated:

> It is certainly correct that RCW 82.36.450 and RCW 82.38.310 themselves do not contain strong procedural safeguards against the legislature, governor, and the tribes failing to police the agreements. But separation of powers does not require the safeguards be found in the same statute under challenge—just that the safeguards exist. *Barry & Barry*, 81 Wn.2d at 158-59. *We have found sufficient safeguards exist because of administrative review and the availability of writs of certiorari, among other things. See e.g., id., City of Auburn v. King County*, 114 Wn.2d 447, 452-53, 788 P.2d 534 (1990); *McDonald v. Hogness*, 92 Wn.2d 431, 445-47, 598 P.2d 707 (1979). No obvious route for administrative review appears here, but should the executive and legislature both fail to police against administrative abuse of power, third parties would not be completely without a remedy. They could, for example, as AUTO did below, challenge the agreements on the grounds the legislature is giving a privilege to the tribes that is not enjoyed by others similarly situated in violation of the privileges and immunities clause (article 1, section 12 of the state constitution), which, frankly, seems to be AUTO's real complaint—the abiding suspicion that the tribes got a privilege that they should not have.

183 Wn.2d at 861-62 (emphasis added).

Murray alleges that the italicized language above establishes that, to be constitutional, a delegation of legislative authority must contain multiple procedural safeguards including administrative review in addition to a constitutional writ of certiorari. But read in context, this is not the case. The court was simply giving examples of adequate procedural safeguards. *AUTO*,

8

183 Wn.2d at 861-62. The court then went on to conclude that adequate safeguards exist in a delegation of legislative authority that *does not provide for administrative review*. *AUTO*, 183 Wn.2d at 861-62. The court affirmed the delegation of authority when the only procedural safeguards that exist are constitutional challenges to the validity of the administrative action. *AUTO*, 183 Wn.2d at 861-62.

Here, the constitutional writ of certiorari provides the same scope of review for the HTCC's determinations as the APA provides for rulemaking actions. Murray's chief complaint, that there is no mechanism to review the *application* of the HTCC's rule to his individual case, does not render the legislature's delegation of authority to HTCC unconstitutional. Moreover, there are additional procedural safeguards imposed by statute. The HTCC is required to provide an opportunity for public comment prior to making its determinations. RCW 70.14.110(2)(b). And the HTCC is subject to the requirements of the Open Public Meetings Act. RCW 70.14.090(4). These statutory safeguards ensure that people "may retain control over the instruments they have created." RCW 42.30.010. Ensuring that the people retain control over the instruments they have created protects against arbitrary government action as required by *Barry & Barry*. *See Barry & Barry*, 81 Wn.2d at 164. Together, the constitutional writ of certiorari and the statutory procedural safeguards provide the same protections as the rulemaking procedures under the APA. Therefore, the HTCC has procedural safeguards in place that are sufficient to control arbitrary action and prevent the abuse of discretionary power by the HTCC.

We hold that there are adequate safeguards to control arbitrary action and prevent an abuse of discretionary power granted to the HTCC by the legislature. Accordingly, RCW 70.14.120 is constitutional and Murray's claim fails.

IV. ADDITIONAL ARGUMENTS

Murray makes several additional arguments. Murray argues that we should reverse or abandon our holding in *Joy*. Murray also argues that the Department and the Board violated his substantive and procedural due process rights by relying exclusively on the HTCC determination. And Murray argues the merits of the HTCC decision as well as whether the surgery was "proper and necessary" in his individual case. Br. of App. at 3. As discussed above, the legislature's delegation of authority to the HTCC is constitutional. There are no grounds for us to overrule our decision in *Joy*. And, Murray cannot establish that he has a vested property interest in the hip surgery because a claimant under the IIA only has a vested property right in proper and necessary medical treatment. Thus, we hold that Murray's due process claims fail.

A. ADHERENCE TO *JOY*

In 2012, we decided *Joy*. Based on the rules of statutory construction, we held that neither the Board nor the courts could make an individualized determination regarding whether a treatment was proper and necessary. *Joy*, 170 Wn. App. at 623-24. We concluded that "RCW 70.14.120(3) is an absolute proscription against state health care coverage for health technologies the HTCC deems are not covered." *Joy*, 170 Wn. App. at 623. Based on the plain language analysis of the statute, we held that an "HTCC non-coverage determination is a determination that the particular health technology is not medically necessary or proper in *any* case." *Joy*, 170 Wn. App. at 624. We also held that there was no conflict between RCW 70.14.120(3) and RCW 70.14.120(4) that allows for an individualized review of an HTCC determination. *Joy*, 170 Wn. App. at 627.

Courts will not overturn or abandon precedent unless an appellant makes "'a clear showing that an established rule is incorrect and harmful.'" *State v. Johnson*, 188 Wn.2d 742, 756-57, 399 P.3d 507 (2017) (quoting *In re the Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). Murray asserts that *Joy* is incorrect because (1) RCW 70.14.120's prohibition against individual determinations does not apply to the Board or the courts and (2) the legislative intent, including the governor's veto of a portion of the bill,[4] demonstrate that the legislature intended the IIA to allow for review of the application of HTCC determinations to individual cases. However, neither of these arguments demonstrate that *Joy* was incorrectly decided because they are the same arguments soundly analyzed and rejected by *Joy*. *Joy*, 170 Wn. App. at 626-27. Accordingly, we decline to overrule or abandon *Joy*.

B. PROCEDURAL AND SUBSTANTIVE DUE PROCESS

Murray also argues that the Department's denial of coverage for his hip surgery violated his procedural and substantive due process rights. We disagree because based on *Joy*, Murray had no vested right protected by procedural and substantive due process.

The due process clause of our constitution guarantees no person will be deprived of life, liberty, or property without due process of law. *Dellen Wood Prods., Inc. v. Dep't of Labor & Indus.*, 179 Wn. App. 601, 626, 319 P.3d 847 (2014); WASH. CONST. art. I, § 3. A person alleging deprivation of due process must first establish a legitimate claim of entitlement entailing vested liberty or property rights. *Dellen Wood Prods.*, 179 Wn. App. at 627. "A vested right must be something more than a mere expectation based upon an anticipated continuance of the existing

---

[4] *See* LAWS OF 2006, ch. 307 (creating the HTCC).

law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another." *Dellen Wood Prods.*, 179 Wn. App. at 627. Here, Murray cannot establish that he has a vested property interest in the hip surgery because a claimant under the IIA only has a vested property right in proper and necessary medical treatment.

Here, Murray's property interests are defined by the IIA.[5] Under the IIA, all workers injured during their employment are entitled to compensation. RCW 51.32.010. But claimants under the IIA are entitled to receive only "proper and necessary medical and surgical services." RCW 51.36.010(2)(a). As we noted above, *Joy* held that an HTCC determination that a particular medical technology is not a covered treatment, "is a determination that the particular health technology is not medically necessary or proper in *any* case." *Joy*, 170 Wn. App. at 624.

Here, the HTCC determined that surgical treatment for Murray's hip injury, FAI, was not covered in 2011, two years before Murray sought coverage for the surgery in 2013. After the HTCC's determination in 2011, surgical treatment for FAI could not be considered proper and necessary treatment in any case. Therefore, Murray had no vested interest in compensation for the surgery under the IIA. Because Murray did not have any vested interest in compensation for surgical treatment for FAI, Murray cannot establish any "legitimate claim of entitlement" required

---

[5] Murray also argues that he has a vested right to a particularized treatment. However, this is a mischaracterization of the rights created by the IIA. As explained here, the IIA only provides a right to "proper and necessary medical and surgical services." RCW 51.36.010(2)(a). The IIA does not create a vested right to any particular treatment. Accordingly, we reject Murray's attempts to frame his vested right as to anything other than proper and medically necessary medical treatment.

No. 48870-1-II

for a constitutional due process claim. *Dellen Wood Prods.*, 179 Wn. App. at 627. Accordingly, Murray's due process claim fails.

C. MERITS OF HTCC'S DETERMINATION AND THE DEPARTMENT'S DECISION

Murray also argues the merits of the HTCC's determination and the Department's decision denying coverage for his hip surgery. However, for the reasons explained above, RCW 70.14.120 precludes us from making an individualized determination regarding whether the FAI surgery was proper and necessary medical treatment. And, the question of whether the HTCC properly exercised its rulemaking authority in determining that FAI surgery was not a covered benefit is not an issue properly before us. Accordingly, we do not address the merits of whether FAI surgery is a proper and necessary medical treatment in Murray's case.

ATTORNEY FEES

Murray seeks an award of attorney fees on appeal under RAP 18.1(a) and RCW 51.52.130(1). RAP 18.1(a) allows a party to be awarded attorney fees provided for by statute. RCW 51.52.130(1) entitles a claimant to attorney fees if a decision of the Board is reversed or modified on appeal. Here, we affirm the Board's decision. Accordingly, Murray is not entitled to an award of attorney fees on appeal.

13

CONCLUSION

We affirm the Board's order denying Murray's claim for hip surgery.

_Sutton, J._

SUTTON, J.

We concur:

_Johanson, J._

JOHANSON, P.J.

_Melnick, J._

MELNICK, J.